## SMITH VS. SCOTT.

CONTRACTS. (1) *Omission of stamp.* (2) *Construction of contract.*

1. A written instrument is not void for an omission of the stamp required by the revenue laws of the United States, unless such omission is shown to have been fraudulent. *Rheinstrom v. Cone,* (26 Wis., 163), and subsequent cases, followed.

2. By a written agreement, A. sold to B. an undivided half of the pine timber standing on certain tracts of land; and B. agreed to cut and haul for A. his (A.'s) remaining half of said timber, and run and deliver it at a certain place for specified prices per M., from which was to be deducted one dollar per M. for the timber so sold to B. B. also agreed to fit out, man and equip a sufficient number of teams to cut, haul and bank at least certain specified amounts of timber cut from each of said tracts, both the half sold to him and the other half, *during the lumbering season of* 1868-9, if the same were an ordinarily good season in certain respects named. A boom company was to run the logs from the place where B. should leave them, and was to raft them; and as soon as they were all rafted, they were to be scaled; and when they were scaled and ready to be delivered, B. was to be paid the whole amount due him for cutting and running at the rates aforesaid, after deducting the one dollar per M. for B.'s half of said logs. It was further agreed that each party should "be the owner absolutely of one undivided half of all of said logs cut and run as aforesaid, subject only to the liens and claims as provided in this contract;" that B. should have a lien upon A.'s share of the logs for the amount due him (B.) for cutting and running the same, and certain charges which he was to advance, and should have power to sell said logs for the purpose of paying the sums due him, in case A. made default in payment thereof. *Held,*

(1.) That payment by A. for cutting and running his share of the logs got out by B. in the lumbering season of 1868-69 is *not a condition precedent* of his right to recover damages for B.'s failure to get out subsequently the balance thereof; and especially must this be held in view of B.'s lien upon A.'s logs and power of sale thereof to pay his charges.

(2.) That said contract (construing all its parts together) does not absolutely vest in B. title to one-half the standing timber on the tracts of land named, but only on condition of his cutting such timber, and perhaps also running the logs; and all timber left standing in violation of B.'s agreement to cut the same, belongs to A.

(3.) That it should have been left to the jury to determine whether the lumbering season of 1868–9 was an ordinarily good one in the respects named in the contract — there being some testimony tending to show that it was; and if so, A. was entitled to damages for B.'s failure to get out during that season the quantities of lumber agreed upon.

(4.) That A. was also entitled to recover for any part of his half of the logs cut and run by B., and retained by the latter, except those properly sold under the power of sale given in the contract to satisfy B.'s lien for charges.

APPEAL from the Circuit Court for *Winnebago* County.

This action was between the same parties as that just reported (p. 420), and was founded upon the written contract there set forth. It was brought to recover damages for several breaches of that contract on defendant's part. The testimony seems to be directed to the following alleged breaches:

1. The failure of defendant to employ a sufficient number of men and teams on section 3 to cut, haul and bank 1,200,000 feet of timber, in the season of 1868–9, as agreed;

2. His failure to divide and account for all the logs which he cut and ran into the Wolf river from section 2; and

3. His failure, after the season of 1868–9, to cut and run the timber left on both sections.

It appears that during the lumbering season of 1868–9, defendant cut and run nearly the stipulated quantity of logs from section 2, but only 857,620 feet from section 3; that he got out no timber after that season, and that a considerable quantity was left on each section. It also appears (as stated in the preceding case) that plaintiff made default in the payment of a portion of the sum due defendant on account of the logs cut on section 2, and that defendant obtained payment by selling a portion of the plaintiff's logs pursuant to the power of sale contained in the agreement.

The proceedings on the trial of the action are sufficiently stated in the opinion. The plaintiff recovered judgment for only nominal damages; and from this he appealed.

*Gillet & Taylor*, for appellant.
*Gabe Bouck*, for respondent.

LYON, J.  I.  The objection that the written agreement upon which this action is predicated, is invalid because not stamped with an internal revenue stamp as the acts of congress, at the time it was executed, required that it should be, is not well taken.   There is no evidence that the stamp was fraudulently omitted therefrom.   We have held in several cases that, in the absence of such evidence, no written instrument is void for want of a stamp, although the law provides that it must be stamped.   *Rheinstrom v. Cone*, 26 Wis., 163;  *Grant v. The Conn. Mutual Life Ins. Co.*, 29 id., 125;  *Timp v. Dockham*, id., 440.   See also *State v. Hill*, 30 Wis., 416, which overrules the case of *John v. The State*, 23 Wis., 504.

II.  The position taken by counsel for the defendant, that be cause the plaintiff failed to pay, at the agreed time, for getting out the logs which were cut and run during the season of 1868–9, he cannot recover damages for the defendant's failure to get out the balance of his share of the logs, is also untenable.   The performance by the plaintiff of his contract to pay for his share of the logs so got out is not a condition precedent to his right to recover damages for the failure of the defendant to get out the balance thereof.   It is not made so by the terms of the contract, and there is nothing in it from which it can be inferred that such was the intention of the parties. Indeed, the power of sale contained in the agreement, and to which the defendant resorted to obtain payment of the plaintiff, gave an easy and effectual remedy to enforce payment for getting out the plaintiff's share of the timber, and raises a strong presumption that the parties did not intend that a default by the plaintiff should defeat the whole contract.   It seems very clear, therefore, that the agreement of the defendant to cut and run the plaintiff's share of the logs is an independent one, and that the right of action for a breach thereof is not defeated by

the failure of the plaintiff to make his payments under the contract when the same became due.     2 Parsons on Contracts (5th ed.), 528, and note 2.

III.   We are inclined to agree with the counsel for the plaintiff, that the written agreement of the parties does not vest in the defendant an absolute title to one half of the standing timber, notwithstanding its language is that the plaintiff sells the same to the defendant.   All of the provisions of the writing must be considered and construed together for the purpose of ascertaining the intentions of the parties; and the one which provides that "each party shall be the owner *absolutely* of one undivided half of all of said logs cut and run as aforesaid, subject only to the liens and claims as provided in this contract," seems to imply that until the timber is cut, that is, until it can properly be denominated logs, the title of the defendant thereto is not absolute, but is conditional upon his cutting the timber, and perhaps also upon his running the logs.   This seems to us to be the true construction of this agreement.   Hence, when the defendant abandoned the contract and neglected and refused further to perform it, all of the standing timber belonged to the plaintiff.   The learned circuit judge took the opposite view of this subject.   We conceive that this was error, but it is not very apparent how the error could have affected the verdict unfavorably to the plaintiff.

IV.   The defendant was bound by the written agreement to get out 1,200,000 feet of logs during the season of 1868–9, on section 3, provided that was an ordinarily good lumbering season as to the length thereof, the quantity of snow and the quality of the sledding.   He failed to get out the prescribed quantity during the season, by over 340,000 feet.   The testimony introduced by the plaintiff tended to show that the season of 1868–9 was a good lumbering season in the particulars specified.   Whether that fact was or was not proved, the testimony tending to prove it was for the jury.   It should have been left to them to find from the testimony what was the character of

the season; and they should have been instructed that if they found that it was an ordinarily good one as regards length, quantity of snow and quality of sledding, the plaintiff was entitled to such damages as he proved that he suffered by reason of the failure of the defendant to get out the prescribed quantity of logs during the same.

But this question was not submitted to the jury; neither were they so instructed. On the contrary, the court instructed the jury as follows: " You will remember that by the terms of this contract, the defendant, *Mr. Scott*, was to cut, haul, bank and run into the jurisdiction of the Wolf River Boom Company, all the timber that was on that tract of land in section 3. He was to do another act — he was to fit out teams and men sufficient to put in a given quantity the first season. *Now there is no proof given that he did not do that*, and therefore the law presumes that he did do it; so that is out of the question; that is, that he furnished these teams and men."

Certainly, the testimony tended to prove that the defendant did not employ a sufficient force to get out the prescribed quantity of logs during the season of 1868–9, and this fact must have been overlooked by the court when the above instruction was given. The instruction being erroneous, and having been duly excepted to, it is fatal to the judgment.

The counsel for the defendant has submitted a very ingenious argument to show that the giving of the instruction could not have injured the plaintiff. But it seems apparent to us that it withdrew from the consideration of the jury a claim for damages of considerable importance, and may have materially affected the verdict adversely to the plaintiff.

V. The court further instructed the jury that " for the nondelivery of those logs on section 2, which were run into Wolf River and delivered to the boom company, under the proof that has been given here, the plaintiff cannot recover, for he has failed to prove such facts as the law says are material and

necessary to his recovery; so that, so far as these logs are concerned, they are excluded from your consideration."

It is claimed that the testimony tended to prove that the defendant retained more than one half of the logs cut on section 2, and failed to account to the plaintiff therefor. If he has failed to deliver to the plaintiff any of those logs which, by the terms of the agreement, belonged to the plaintiff, or to account therefore, excluding those which were sold under the power of sale before mentioned, we see no good reason why the plaintiff may not recover the value of the same in this action.

*By the Court.* — The judgment of the circuit court is reversed, and a *venire de novo* awarded.