PESHTIGO LUMBER COMPANY, Respondent, vs. ELLIS and another, imp., Appellants.

*September 6—September 27, 1904.*

*Contracts: Sale of standing timber: Cutting prevented by threats: Extension of time: Sustaining demurrer when judgment would be fruitless.*

1. Plaintiff, by a contract of sale not under seal, acquired the equitable ownership of standing timber, to be cut and removed by a certain date. A subsequent purchaser of the land, to whom it was conveyed, without reservation of the timber, but who, it was alleged, knew or ought to have known of plaintiff's rights, claimed to be the owner of the premises and notified plaintiff that if it cut any timber it would be held responsible for the highest market value thereof under sec. 4269, Stats. 1898; and because of such threat of suit plaintiff desisted from the cutting. *Held,* that this was not such a prevention of the exercise of plaintiff's right as would entitle it to equitable relief extending the time within which the timber might be cut.

2. In an action to establish plaintiff's equitable title to standing timber and for an extension of the time within which it had the right to cut and remove it, such time expired after service of the complaint but before a general demurrer thereto was served. No right to an extension of the time being shown, the demurrer was properly sustained, since a judgment merely establishing the equitable title which plaintiff had when the action was commenced would have been of no value.

APPEALS from orders of the circuit court for Marinette county: S. D. HASTINGS, Circuit Judge. *Reversed.*

The complaint in this action, after alleging the corporate character of the .plaintiff, alleges, in substance, that the defendant Duncan McGregor, on October 14, 1899, owned two forty-acre tracts of land in Marinette county, Wisconsin, and on that day sold to the plaintiff all of the timber then standing or lying thereon, with the privilege of entering on the lands to cut and remove said timber at any time prior to April 1, 1903, for a consideration of $1,500, and executed the following written agreement, signed by himself and wife, as evidence of said contract:

"Peshtigo, Wisconsin, Oct. 14th, 1899.
"For and in consideration of Fifteen Hundred ($1500.00) Dollars, to me in hand paid, the receipt whereof is hereby acknowledged, I hereby sell and convey to *The Peshtigo Lumber Company,* a state corporation of Wisconsin, all of the timber now standing or lying on the Northwest Quarter of the Northeast Quarter (N. W. ¼ of N. E. ¼) and the Northwest Quarter of the Northwest Quarter (N. W. ¼ of N. W. ¼) of Section Five (5) in Township Thirty-four (34) north, of Range Eighteen (18) east, with the privilege of entering upon the said described land to cut and remove the said described timber at any time prior to April 1st, 1903.
"D. McGREGOR,
"M. A. McGREGOR;"

that at the time of said sale there was a large amount of white pine and hemlock timber standing and growing upon said premises, none of which had been removed at the time of the commencement of this action, and that said timber now stand-

ing is worth at least $4,000; that on March 20, 1902, the de-
fendant Duncan McGregor and his wife executed and deliv-
ered to the defendant *Ellis* a quitclaim deed conveying said
premises, and containing no. reservation or exception of the
timber thereon, and that said deed was duly recorded; that
said *William Ellis* knew of the sale of said timber to the
plaintiff, and had full knowledge of all of the plaintiff's rights
in relation thereto, at the time of said sale; that about Sep-
tember 26, 1902, the said *Ellis* and his wife executed and de-
livered to the defendant *Gottschalk* a warranty deed of said
premises, which deed contained no reservation or exception
of said timber, and was duly recorded; that both of said deeds
were made and delivered without the knowledge of the plaint-
iff, and that plaintiff had no notice of either of them until
November 18, 1902; that shortly prior to said last-named
date the plaintiff made preparations to cut and remove the
said timber of said premises during the fall of 1902 and the
winter following, and started to cut a logging road thereon,
whereupon the defendant *Gottschalk* notified the plaintiff in
writing not to cut any roads on said premises, or any timber
thereon, and that for all timber cut thereon he would hold the
plaintiff to the highest market value thereof, pursuant to the
provisions of sec. 4269, Stats. 1898; that said *Gottschalk* at
that time claimed and now claims to be the owner of said
premises, and that pursuant to said notice, by reason of *Gotts-
chalk's* claim of ownership and the threat contained in said
notice, the plaintiff desisted, and has been and now is pre-
vented from cutting or removing said timber within the time
named in said contract, except at the risk of being mulcted
in damages to at least double the value of the timber on said
premises; that said McGregor and *Ellis* negligently and
wrongfully made said conveyances well knowing the plaint-
iff's rights in said timber, and negligently and wrongfully
omitted to except or reserve said rights in their said convey-
ances; that at the time of the conveyance of said premises by

*Ellis* to *Gottschalk,* the value of the timber on said premises was at least $4,000, and the value of the premises exclusive of the timber was at least $250; and that said *Gottschalk* did not pay any consideration for the timber so conveyed, but that he knew or ought to have known of the plaintiff's rights therein, and was not an innocent purchaser of said premises for value, and held title thereto in trust for the benefit of the plaintiff; and that the plaintiff had no adequate remedy at law.

Judgment was demanded to the effect that the plaintiff be adjudged to be the owner of said timber, and that the defendants be enjoined from selling or removing the same, or from interfering with the cutting and removing thereof by the plaintiff during such reasonable time as the court may fix; and, in the event that such relief be denied, then that the defendants be required to account for the value of said timber, and that said plaintiff have judgment therefor.

This action was commenced by the service of summons January 16, 1903. The complaint was served March 14, 1903, and on April 14, 1903, the defendants McGregor and *Ellis* demurred to the complaint on the grounds, first, that several causes of action had been improperly united; second, that the complaint does not state facts sufficient to constitute a cause of action; and third, that the complaint does not state facts sufficient to constitute a cause of action in equity. The defendant *Gottschalk* on the same day filed a separate demurrer to the complaint upon the same grounds. The circuit court sustained McGregor's demurrer, but overruled the demurrers of *Gottschalk* and *Ellis,* whereupon said *Gottschalk* and *Ellis* appealed separately to this court.

*Nathan Glicksman,* for the appellants.

For the respondent there was a brief by *Cary, Upham & Black,* and oral argument by *W. E. Black.* They contended, *inter alia,* that because plaintiff was prevented from cutting the timber by appellant's assertion of title and threat of suit,

equity will relieve against a forfeiture of title to the timber for breach of the condition to cut and remove it before April 1, 1903.   2 Story, Eq. Jur. (13th ed.) § 1319; *Donnelly v. Eastes,* 94 Wis. 390, 396; *Gates v. Parmly,* 93 Wis. 294; 1 Pomeroy, Eq. Jur. §§ 450, 451; *Henry v. Tupper,* 29 Vt. 358; *Northcote v. Duke,* Ambler, 511; *Thomas v. Porter,* 1 Ch. Cas. 95; *Maginnis v. Knickerbocker I. Co.* 112 Wis. 385; *Sanders v. Clark,* 22 Iowa, 275; *Monroe v. Bowen,* 26 Mich. 523; *Small v. Robarge,* 132 Mich. 356, 93 N. W. 874; *Evansville & T. H. R. Co. v. Nye,* 113 Ind. 223.   Defendant *Gottschalk* cannot now be heard to say that his claim of ownership was untrue, and is estopped from claiming a forfeiture of the timber by plaintiff.   *Frei v. McMurdo,* 101 Wis. 423; *Railway Co. v. McCarthy,* 96 U. S. 258, 267.

WINSLOW, J.   This is an action in equity to obtain a judgment allowing the plaintiff to cut and remove timber from the lands in question after the time limited by its contract, on the ground that the defendants *Gottschalk* and *Ellis* by their acts wrongfully prevented the plaintiff from cutting and removing the same during the contract period, and should not be allowed to take advantage of their own wrong.

The contract set forth in the complaint was not executed under seal, and hence conveyed no legal title to the standing timber, because it is part of the real estate; but it sufficed to create an equitable right in the timber which a court of equity would protect and enforce in a proper case.   This is obvious and is not questioned.   That right so created was, in effect, the equitable ownership of all the timber which the plaintiff should cut and remove prior to April 1, 1903.   *Strasson v. Montgomery,* 32 Wis. 52; *Golden v. Glock,* 57 Wis. 118, 15 N. W. 12.

While the equitable ownership expired on the date named, it does not follow that a court of equity might not, under a proper showing of fact, grant relief to the plaintiff and allow

it to cut and remove timber after that date.   Probably, if it appeared that the defendants, by physical force, prevented the cutting of the timber within the contract time, or procured an injunction which operated to the same effect, a court of equity would not allow them to say to the plaintiff: "You should have removed your timber during the contract time." The principle is that "he who prevents a thing being done shall not avail himself of the nonperformance he has occasioned."    Broom's Legal Maxims (8th Am. ed.) 281; *Sanders v. Clark,* 22 Iowa, 275; *Monroe v. Bowen,* 26 Mich. 523.

But it is very clear that, in order to justify relief on this ground, it must appear that the defendant by physical force, or. by acts legally equivalent to such force, actually prevented the plaintiff from exercising its right; and we think it is equally clear that the present complaint does not show such prevention.   It is true that it is alleged that in November, 1902, the defendant *Gottschalk* notified the plaintiff that the land was his, and that he should hold it responsible for the highest market value of any timber it might cut thereon.   This notification, however, cannot be held to amount to prevention. It was a mere claim of title, and a notification that, if the plaintiff cut timber, it would cut the same at the risk of an action for damages.   This, however, is a warning frequently given, and rather commendable than otherwise, because it notifies the adverse party of what may be expected to ensue from its acts.   People frequently are obliged to choose between two courses of conduct, knowing that the choice of one course will result in a lawsuit and that the choice of the other may forfeit valuable rights; but we have not supposed that this knowledge would relieve from the necessity of making a choice, or excuse one for sleeping on his contract rights.

When a man proceeds to convert to his own use property which he knows is claimed by another, he also knows that he is liable to be sued for his act; but it cannot be said that he can, because of such mere claim, at once desist from further

action, and insist that he was prevented from exercising his rights of ownership. This is substantially the present situation. The defendant's threat of suit was a mere statement of that which the plaintiff, as soon as a claim of ownership was made, knew was liable to occur. There is no claim that the plaintiff ever believed that the defendant *Gottschalk* had a good title or was an innocent purchaser. The statement simply is that the plaintiff desisted from action because of the threat of suit. Had it appeared that the defendant *Gottschalk* falsely claimed to own the property as an innocent purchaser, and the plaintiff believed said claim, and in reliance on such belief desisted from cutting timber, another question would be presented, and one on which we intimate no opinion.

The time for cutting the timber had not quite expired when the complaint was served, but it had expired before the demurrer was served. It being apparent, therefore, that a judgment establishing the equitable title to the timber which the plaintiff had at the time the action was commenced would be of no value because that title had been divested before judgment could be rendered, the general demurrer was properly sustained. A court will not undertake labor which, when completed, is in vain. *Rust v. Conrad,* 47 Mich. 449, 11 N. W. 265.

*By the Court.*—Orders reversed, and action remanded with directions to sustain the demurrers of the appellants.