LOREE, Appellant, vs. WEBSTER MANUFACTURING COMPANY, Respondent.

*December 13, 1907—January 8, 1908.*

*Logs and logging: Contract for logging: Construction: Compensation: Evidence: Ambiguity: Parol evidence: Appeal and error: Admission of evidence.*

1. Plaintiff brought an action on a contract providing that in consideration of his cutting and delivering timber from a certain tract of land the defendant would, upon receipt of the logs at its yard, scale such logs and pay the plaintiff a certain sum per thousand log scale, and, if the parties were unable to agree upon the scale, that the scale should be made by a person to be mutually chosen, otherwise the scale was to be made by the district scaler. *Held*, that the logs were to be paid for upon a scale thereof and not according to the true quantity otherwise ascertained, and that such scale, being properly made, was conclusive upon both parties.

2. In such case it appeared that at the time plaintiff expressed dissatisfaction with the scale made by the defendant the delivery of the logs had been practically completed; that it was impossible to rescale the logs already delivered owing to the fact that as delivered and scaled they had been immediately mixed with defendant's other logs in its mill yard, and that the logs cut by plaintiff had no distinguishing marks. *Held*, that the scale made by defendant as the logs were delivered was conclusive and the measure of plaintiff's right to compensation.

3. In such case the provision relating to the scale to be made after a change of scalers is *held* to apply only to future deliveries.

4. A contract providing that plaintiff shall cut and deliver timber from defendant's lands, the service to be compensated at a specified sum "per thousand log scale," and stipulating that defendant shall have the logs scaled as delivered, that if the parties are unable to agree upon the scale it shall be made by one mutually chosen, and, if the parties cannot agree in such choice, then by the district scaler, is ambiguous as to whether logs already scaled shall be rescaled, and entitles either party to offer such evidence as may aid the court in its construction.

5. In such case it is error to admit evidence of the negotiations and oral agreements between the parties prior to the signing of the written contract, and to construe the contract in accordance therewith, or to interpolate them into the contract.

6. Where parties reduce their agreements upon both sides to writing, that is the final and conclusive evidence of what they have agreed, and verbal proposals or stipulations, on which at any time in the negotiations their minds have apparently met, are deemed to have been abandoned or merged into the writing, and cannot be considered.

7. Such rule does not exclude facts, circumstances, and knowledge of the parties existing at the time of entering into the agreement which may aid in giving meaning to the words that are written therein.

Appeal from a judgment of the superior court of Douglas county: Charles Smith, Judge. *Affirmed.*

Plaintiff and defendant made a written contract September 10, 1904, wherein plaintiff agreed to cut and deliver on board cars at Blueberry Siding the timber on a certain tract of land belonging to defendant, in consideration whereof the defendant agreed

"upon receipt of said logs at its yard in South Superior to scale said logs . . . and to pay said first party for said logs $8.50 per thousand logs scaled. . . . It is further mutually agreed that in case both parties to this contract are unable to agree on scale that the scale shall be made by a person to be mutually agreed upon by the parties to this contract, and in case they shall be unable to agree on a scale such scale shall be made by the district scaler."

Plaintiff entered upon the work and commenced shipping logs early in January. On the 20th defendant sent a scale sheet for the first eleven carloads, and followed these up at intervals of a few days with the scale sheets of succeeding receipts, specifying each car by its number, with the number of logs and the amount per scale of each kind of lumber and of the total number of feet thereon. On March 20th plaintiff wrote defendant that he was dissatisfied with the scale and requested that the logs should be rescaled before being sawed, suggesting also scalers who would be satisfactory to him. To this the defendant at once replied that it would be impossible to rescale the logs which had been delivered, as they

had immediately been mixed with other logs in the yard and
were indistinguishable, offering, however, to go over the
accounts and rectify any mistake which could be found
therein. At that time the delivery of the logs had been prac-
tically completed, there being but one more car which in-
cluded logs then frozen into the ice. That car was shipped
as soon as the melting ice made possible and is not in dispute.
The total of defendant's scale of the logs was 349,280 feet.
Plaintiff had kept no account, but from time to time had
scaled wagonloads of logs whereby he claimed to have an
approximate estimate of the average number of logs to the
thousand, from which he estimated his total· deliveries at
some 460,000. The following summer he caused a stump
scale to be made, the result of which was 424,710. He com-
menced this suit to recover the contract price for the logs
claimed to have been. delivered by him. The action was
tried before a referee, who made findings to the effect that
defendant, ·by mixing the logs with others, had rendered im-
possible the scaling of them by a scaler to be agreed upon in
case of plaintiff's dissatisfaction as contemplated by the con-
tract; that the amount of logs actually delivered was at least
the amount found by the stump scale, and accordingly found
for the plaintiff in a balance of $525, which sum would re-
sult in that case. The court, upon motions on the one side
to confirm and on the other to modify, imported into the con-
tract upon certain evidence, by way of construction, the
following:

"That if the plaintiff should be unable to agree upon the
scale as reported to him by defendant he should notify the
defendant, and from that time on the scale should be ·made
by a person to be mutually agreed on by the parties or the
district scaler."

From which it resulted that plaintiff was bound by the de-
fendant's scale prior to the demand for a change of scalers.
Accordingly he held that plaintiff was entitled to recover

only for the 349,000, although he confirmed the finding of the referee that the true amount was 424,000. Upon this basis concededly the defendant had overpaid in the sum of $115.53, and judgment was rendered in its favor for that amount, from which the plaintiff appeals.

For the appellant there was a brief by *W. P. Crawford,* attorney, and *L. K. Luse,* of counsel, and oral argument by *Mr. Luse.*

*H. V. Gard,* for the respondent.

DODGE, J. Under the written contract of the parties it is obvious that the logs were to be paid for upon a scale thereof and not according to the true quantity otherwise ascertained, and that such scale, being properly made, was to be conclusive on the parties. The important question is how that scale was to be made, or, rather, since it was to be made, until plaintiff's dissatisfaction, by the defendant and at its yards, what is the true construction of the provisions of the contract in case of dissatisfaction? The two theories are about as follows: The plaintiff contends that if, after the logs were delivered, either wholly or partially, he became dissatisfied with the scale, another scaler was to rescale the logs already scaled and to scale those not yet delivered, and his scale must supersede the former. The theory of the defendant is that the scale is a process which must go on car by car as the logs were delivered, and became complete and binding as each car was scaled, but that, at any time upon dissatisfaction, plaintiff had a right to have substituted a satisfactory person in place of the defendant's employees to do that work as to subsequent deliveries. The contract may be conceded to be ambiguous on this subject, and therefore to entitle either party to offer such evidence as might aid in its construction. The court so viewed it and took evidence of facts and circumstances surrounding the making of the contract, but also of negotiations and oral agreements between

the parties prior to the signing, and construed the contract in accordance with such oral agreements, or rather interpolated them into it. In this latter respect the court erred. When parties reduce their agreement upon both sides to writing, that is the final and conclusive evidence of what they have agreed, and verbal proposals or stipulations, on which at any time in the negotiations their minds had apparently met, are deemed to have been abandoned or merged in the writing, and cannot be considered. *Excelsior W. Co. v. Messinger,* 116 Wis. 549, 93 N. W. 459; *Corbett v. Joannes,* 125 Wis. 370, 104 N. W. 69. This rule, however, does not exclude facts, circumstances, and knowledge of the parties existing at the time of entering into the agreement which may aid in giving meaning to the words that are written therein. *Excelsior W. Co. v. Messinger, supra; Corbett v. Joannes, supra.* When the parties stipulated that, after expression of plaintiff's dissatisfaction and agreement upon a new scaler, the scale should be made by him, they must have intended by the words "the scale" some operation which was certain to be possible at the time when, by the contract, it was to be performed. Now the time when plaintiff was dissatisfied might come at any period in the course of the contract work. It might come immediately after the first few shipments of logs, and it might be postponed till a large part or all of the logs had been delivered. If it appears that at any of those times it would, in the ordinary course of events as understood by both parties, be impossible to make a rescale of the logs previously delivered and passed into the yard of the defendant, we must conclude that the parties did not intend to provide for such an operation. For this purpose, then, we may examine the evidence to consider whether it throws any light upon the understanding of the parties. The defendant was a sawmill owner. The yard into which these logs were to be delivered was appurtenant to its sawmill, and logs were drawn daily from it to be sawed. The plaintiff knew, as was the fact, that defendant

was to receive during the logging season into its yard, over the same railroad track, many other of its own logs from other sources; that as they were its own, as also were these, there was no object in its discriminating amongst them after they have been received, and it is in evidence, undisputed, that the defendant's president at the time of making the contract explained to the plaintiff that it was intended and expected that the logs cut by him, as they were delivered in the yard, would be mixed with others. In the light of this knowledge, and the conduct of the plaintiff himself in failing in any way to mark these logs so that they could be identified after they were so mixed, it is obvious that any rescale after a considerable number of them had been delivered into the yard would be impossible, and such impossibility must have been in the contemplation of the parties. From this it results that the scale referred to by the contract to be made after the change of scalers could not have been understood or intended to apply to the logs delivered, but only to future deliveries. We therefore reach the same general conclusion as the circuit court, after eliminating improper evidence considered by him, and hold that the scale made as the logs were delivered was conclusive, and plaintiff is entitled to recover only upon that scale, except with reference to the one undelivered carload, as to which there is no dispute; and that it is wholly immaterial what was the actual quantity of logs delivered.

This conclusion renders immaterial all the other questions discussed, and results in affirmance of the judgment.

*By the Court.*—Judgment affirmed.