WESTERN LIME & CEMENT COMPANY, Appellant, vs. COPPER RIVER LAND COMPANY, Respondent.

*February 18—March 9, 1909.*

(1) *Contracts: Construction by court: Findings of fact: Presumption on appeal.* (2–7, 9) *Vendor and purchaser: Exception or reservation? When title passes: Rights of vendor's assignee: Removal of timber excepted from grant: Limitation of time: Condition subsequent: Payment of taxes.* (8) *Parol evidence affecting writing.*

1. Where the trial court· decides and finds that a contract is not ambiguous so as to justify consideration of extrinsic evidence as to the surrounding circumstances, further so-called findings as to the intention of the parties evinced by various clauses of the contract are not findings of fact in favor of which there would be a presumption on appeal, but are merely conclusions of law reached in construing a writing from its own terms.

2. A land contract and a deed made in execution thereof, in both of which the words "excepted" and "reserved" were used inter-

changeably with respect to timber on the land, are construed as showing an intention of the parties that such timber should be excepted from the conveyance, and it is *held*, therefore, that the title thereto remained in the grantor.

3. Under a land contract and a subsequent deed in pursuance thereof the real transfer of title takes place at the time of the contract, at least in case of part payment of the consideration, and the deed when made relates back to the date of the contract.

4. Where in such case the deed is made by a transferee of the rights of the original vendor subject to the land contract and, as to the right to cut and remove timber excepted from the grant, expressly refers to the terms and conditions of the contract, such terms and conditions control that right.

5. Where otherwise the result would be unreasonable or absurd, a mere agreement in a land contract to remove within a certain time standing timber which is to be excepted from the conveyance may be construed to include a further agreement that failure to so remove the timber shall be deemed a breach of a condition subsequent and divest the vendor of his title thereto.

6. So *held* as to a contract for the sale of a large tract of land for the known purpose of colonization and sale in small parcels to settlers, where no right of actual occupancy and use could be transferred to such settlers so long· as timber belonging to the original vendor remained on the parcels purchased by them.

7. In a contract for the sale of 37,000 acres of land excepting the standing timber, an agreement by the vendor to remove all of such timber at the rate of at least 6,000 acres per year was followed by a provision that in case of his failure to do so he should pay such enhancement of taxes as resulted from the timber remaining on the land. It appeared, among other things, that at the time of making the contract the estimate of the amount of the timber was approximate only and the capacity of the vendor's mills to consume in each year the product of 6,000 acres was doubtful. *Held* that, while removal of the timber was a condition subsequent, yet it was the evident intention of the parties that there should be some period of grace during which the failure of strict performance should not work a forfeiture of the vendor's title to the timber; and such period not being specified, the vendor was entitled to a reasonable time, in view of all the circumstances, for removal of the timber after the expiration of the time expressly stipulated.

8. Generally, verbal negotiations between parties who finally reduce their contract to writing are incompetent, except so far as they are declaratory or evidentiary of facts and circumstances in the light of which the contract is made and in the light of which thereafter it may be construed.

9. In a contract for sale of a large tract of land to a company for
colonization purposes the timber was excepted and the vendor
agreed to pay the taxes until all the timber had been removed
or until a tract or tracts should be sold or contracted by the
purchaser to third persons. *Held*, that assignment of the con-
tract by the purchaser to another company was not such a sale
of a tract or tracts as relieved the vendor from payment of
taxes.

APPEAL from a judgment of the circuit court for Milwau-
kee county: J. C. LUDWIG, Circuit Judge. *Reversed.*

In September, 1899, the Upham Manufacturing Company
entered into a land contract with the Rib River Farm Land
Company for the sale to the latter of approximately 37,000
acres of land, situated in Taylor and Lincoln counties, cov-
ered by timber so as to be unavailable to the purchaser for its
known purpose of colonization and sale in small parcels to
settlers. The land contract, after agreeing to convey upon
payment of the purchase price of something over $92,000, in
instalments, $26,000 cash and $10,000 at intervals thereafter
up to May 25, 1902, with interest, contained the following:

"And this agreement and such conveyances being and to be
subject to reservations and exceptions following, to wit: All
timber and forest products of or on said lands, save only such
growth as is fit for cord wood only, being growth five inches
in diameter or under, are and are to be excepted from such
sales and conveyances, and are expressly reserved by said
party of the first part to itself, its successors and assigns, with
the right to cut and remove the same. And the said party of
the first part hereby agrees and binds itself, its successors and
assigns, to cut and remove the said timber and forest products
so reserved to itself at the rate of at least six thousand
(6,000) acres per year, commencing May 1st, 1900, and in
case of failure so to do, said party of the first part shall at all
times be liable for and pay any increase of taxes or assess-
ments levied or made by reason of such timber remaining or
continuing upon the lands while the same remains or con-
tinues thereon. Said party of the first part also excepts and
reserves to itself, its successors and assigns, from the opera-
tion of this agreement and from such conveyances, the neces-
sary grounds for sawmill or manufacturing plant and site and

pond on Rib river or elsewhere, to be selected by it within one
year from the date hereof, and also excepts and reserves to it-
self, its successors and assigns, from the operation of this
agreement, and such conveyances, a strip not exceeding one
hundred (100) feet in width, for right of way for railway or
logging railroad and spurs over such of said lands as such rail-
road or spurs when projected may cross or enter upon, such
strip to be selected, and such railroad and spurs to be pro-
jected and surveyed, by said party of the first part within
such time as may be reasonable, considering the need and state
of development of said lands. . . . Said party of the first
part further agrees and binds itself, in case of sales by said
second party to actual settlers of any of such tracts of forty
acres or over, so paid for and conveyed hereunder, that it, said
first party, will, upon written request, cut such tracts in the
next logging season and peeling season after such request, and
then it will give preference to such settlers in case they or any
of them should wish to work at cutting and logging on the
premises purchased by them respectively, as employees of said
first party on such lands in said work. And in consideration
of the premises said party of the first part further agrees and
binds itself to build, within nine months from the date hereof,
at least ten miles of railroad within said counties, or from
Athens, Wisconsin, toward and into said counties or one of
them. It is further agreed and understood that said party of
the first part is to pay the taxes on said lands until it shall,
first, have given to said party of the second part written notice
that all timber has been removed from tracts specified in such
notice, or, second, until a tract or tracts shall have been sold,
or contracted by said second party to some third person or per-
sons, and thereupon, and in either of said events, and there-
after, the party of the second part shall pay all taxes and as-
sessments on all tracts so specified in such notice, or so sold or
contracted."

Prior to 1902 the rights and obligations of the Upham
Manufacturing Company became transferred to the Marsh-
field Land & Lumber Company, subject to said contract. The
rights of the Rib River Farm Land Company as to certain
specified lands constituting about one quarter of the acreage
became transferred to the plaintiff, *Western Lime & Cement
Company,* and the interest of the Rib River Farm Land Com-

pany in the remainder of said lands was conveyed back to the Marshfield Land & Lumber Company. In September, 1902, the Marshfield Company executed to the plaintiff warranty deeds, one for each county, of the lands to which it had acquired the contract rights, which are the lands described in the complaint. Those deeds, after full words of conveyance and prior to the *habendum* clause, contained the following:

"This conveyance is subject to the reservations and exceptions following: The said party of the first part does hereby except from sale and reserve to itself, its successors and assigns, all the timber and forest products of or on said lands, save only such growth as is fit for cord wood only, and all such timber and forest product fit and valuable for any other purpose than cord wood is expressly reserved by the said party of the first part to itself, its successors and assigns, with the right and license to enter upon said lands, and cut and remove the same, according to the terms and conditions of" the land contract.

Later, on May 18, 1906, the reserved rights of the Marshfield Company were conveyed to the defendant by an ordinary deed of conveyance "subject to the terms and conditions of said contract." In the logging seasons between the date of the contract and that of 1906 and 1907 the Upham Company, by authority of the Marshfield Company, cut the timber on about 14,000 acres of the lands covered by the original contract, but practically none upon the lands described in the complaint, and in the following year, prior to the commencement of this action, the defendant cut 6,600,000 feet, a part thereof from plaintiff's lands, and was threatening to continue its cutting upon plaintiff's lands at its convenience thereafter, claiming to own all the timber and forest products other than those conveyed only for cord wood.

Plaintiff commenced this action to establish its title to all timber upon the lands mentioned in the complaint, to enjoin defendant from entering and cutting any thereof, and to require the defendant to account for all that had been cut and removed subsequent to May 1, 1906, a date apparently

adopted as the expiration of seven years after the date of the land contract.

Upon the trial a large amount of parol testimony was taken both as to the situation and business purposes of the parties to the contract, and also as to their oral negotiations and agreements and as to their understanding of certain terms of the written contract. The court in its finding declared that the contract was not ambiguous and that the extrinsic evidence should not be considered. He, however, obviously did consider the extrinsic evidence as to the character of the land and the extent to which the presence of the timber prevented any practical occupation or use of it by the plaintiff, in finding as a fact that the timber so covered the land as to render "the surface thereof unavailable to plaintiff while said timber remained thereon." It was found as a fact that the timber was not conveyed, but remained the property of the Upham Manufacturing Company and its assigns, together with a right to enter and cut at any time without limitation, subject only to liability for damages for breach of its covenants to remove.

As conclusions of law he held that plaintiff did not own any of the timber; that defendant owned all of it on the lands described in the complaint, and plaintiff was entitled to no relief in this action, and entered judgment dismissing the complaint, but without prejudice to plaintiff's right to maintain an action to compel the removal of said timber and for damages for breach of the agreement to cut; from which judgment plaintiff appeals.

For the appellant there were briefs by *Harrison S. Green,* attorney, and *Van Dyke & Van Dyke,* of counsel, and oral argument by *Mr. Green.*

For the respondent there was a brief by *Quarles, Spence & Quarles,* attorneys, and *A. E. Thompson* and *George Lines,* of counsel, and oral argument by *Mr. Lines* and *Mr. Thompson.*

Dodge, J.    The trial court reached the conclusion that the contract in question was not ambiguous so as to justify consideration of the surrounding circumstances needing to be disclosed by extrinsic evidence.    The so-called findings of fact, as to the intention of the parties evinced by various clauses thereof, therefore are not such, but merely his conclusions of law in the judicial function of construing a writing from its own terms.    We must therefore approach the question of construction as an original one, unaided and unembarrassed by the presumption in favor of a finding of fact.

The first question, very much debated, is whether the forest products other than cord wood, which for brevity we shall hereafter designate timber, were excepted from the conveyance to the plaintiff's grantor, or whether there was merely a. reservation of a right to enter and retake such timber, a distinction which is well recognized in the authorities.    The expressions used, both in the deed and contract, are "excepted" and "reserved," sometimes one and sometimes the other.    Such interchangeable use of the two terms of itself creates a measure of ambiguity.    *Pritchard v. Lewis,* 125 Wis. 604, 104 N. W. 989.    But from consideration of the entire contract and the purposes of the parties as they are disclosed by the contract itself, we reach the conclusion that, so far as the parties had intention on the particular subject, it was to the effect that the title to the timber should remain in the original owner and not be conveyed either by the contract or the deed. We do not deem it necessary to enter into extended discussion of the reasons for such conclusion.    It is supported by very much the same reasoning as contained in *Pritchard v. Lewis, supra,* and the authorities therein cited; also by *Williams v. Jones,* 131 Wis. 361, 111 N. W. 505.    Starting, therefore, with that definition of the title, we have yet to consider the force and effect of the clause in the contract whereby the defendant's predecessor agreed to remove such timber at the rate of 6,000 acres per year, or, in other words, the whole of it within seven years.    We deem that provision of the con-

tract to control defendant's rights, both because of the special
reference thereto contained in the deed made in execution of
the original land contract, and because of the principle, well
established in Wisconsin, that the real transfer of title under
a land contract and a subsequent deed in pursuance thereof
takes place at the time of the contract, at least in case of part
payment of the consideration, and that the deed when made
relates back to the date of the contract. *Krakow v. Wille,*
125 Wis. 284, 103 N. W. 1121. The trial court treated this
clause as a mere promise, with no result from its breach ex-
cept money damages. Appellant contends that the parties in-
tended thereby to limit the right to the timber and that by its
breach a forfeiture results. It is urged, on authority, that
courts will be slow to import into a mere agreement to do
some act, a further agreement that the failure to perform it
shall constitute a condition subsequent sufficient to divest an
existing title. Nevertheless if from the contract, properly
construed, we must conclude that the parties intended and at-
tempted to express an agreement to that effect, it is our duty
to so construe and enforce it. Justification for construction
of even very plain words in a contract may arise if otherwise
the result would be wholly unreasonable or absurd. *Corbett
v. Joannes,* 125 Wis. 370, 387, 104 N. W. 69. It seems to
us that in a sale of a large tract of land to a purchaser for the
purpose of presently selling the same in parcels to actual set-
tlers, an agreement that the seller might persist in practical
possession and occupancy of the whole of said land, so that as
to none of it could anything but a bare legal title without
right of occupancy and use be transferred to such settlers,
would be unreasonable to the extent of absurdity. It would
be in practical negation of the acquisition of the rights for
which it is apparent the purchaser pays his money. We can-
not read this clause, so industriously inserted, in any other
light than indicating the intention of the parties to express an
agreement for some limitation upon the right of the seller to

occupy said land with its timber to the exclusion of the pur-
chaser and its anticipated and intended grantees.   How it
should be effective as a limitation, whether by mere threat of
damages, or by way of some termination of the seller's right,
is not declared.   A right to recover damages for breach of
this agreement would not accomplish the obvious purpose of
placing the lands in a condition for use by the purchaser, and
the amount of the money damages really suffered would be
almost conjectural.   The situation is not without precedent
or at least analogy in several cases which have come before
this court with reference to contracts or conveyances separat-
ing the title to the standing timber from the title to the soil,
and in nearly all of them an expression of a time limit within
which the right of severance of the timber from the land is to
be exercised has been held sufficient to express a meeting of
the minds of the parties upon the intention that the right to
the timber and to enter for removing the same should be ter-
minated at the end of such period.   In other words, that the
declaration of such duty to remove, whether in the form
merely of a covenant or a limitation, implied a condition sub-
sequent on the happening of which the right should terminate.
*Smith v. Scott,* 31 Wis. 437, 440; *Golden v. Glock,* 57 Wis.
118, 15 N. W. 12; *Hicks v. Smith,* 77 Wis. 146, 46 N. W.
133; *Williams v. Jones,* 131 Wis. 361, 111 N. W. 505; *Pesh-
tigo L. Co. v. Ellis,* 122 Wis. 433, 100 N. W. 834.   Another
class of cases presents numerous instances where words of
mere covenant have been held sufficient to express a real in-
tention of a condition subsequent and resulting forfeiture by
reason of the impossibility otherwise to avert inequitable re-
sults.   Illustrations are: *Glocke v. Glocke,* 113 Wis. 303,
89 N. W. 118; *Wanner v. Wanner,* 115 Wis. 196, 91 N. W.
671; *Burgson v. Jacobson,* 124 Wis. 295, 102 N. W. 563.
We are convinced that the reasons of such analogous decisions
should control the instant situation and lead us to construe
this limitation of time as declaring a condition subsequent.

If, therefore, the agreement to cut and remove all the timber within seven years stood alone, we should be unable to avoid the conclusion that defendant's right thereto had ceased, whether that right was a title excepted from the grant to the plaintiff's predecessor or merely a reservation of a privilege to enter and remove the timber. That agreement, however, does not stand alone. It is immediately followed by the provision of the contract that if the owner does not remove the timber within the time limited he shall be subject to other duties, namely, the payment of such enhancement of taxes as results from the presence of the timber on the land. This provision is extremely significant of the mental attitude of the parties to the contract. It is inconceivable that they should have thus embodied it in immediate context with an absolute agreement to remove the timber at the rate of 6,000 acres per year unless they had contemplated that in some contingency that agreement might not be carried out; and yet it must have been their intention that, even though not carried out according to its strict letter, the seller should continue to have some rights in the timber upon which it was to continue to pay taxes. Still, we are unable to bring ourselves to a belief in an intention that there should be no limit of the time within which it must remove it or forego all right thereto. In this state of uncertainty as to just what purpose was intended to be expressed by these somewhat contradictory provisions, we have been driven to consider certain facts with reference to the situation of the parties at the time of contracting: such as that the seller was a manufacturer of lumber and lumber products, with mills adapted to the use of the timber on these lands; that the estimate of the amount of timber on the lands was approximate only, and that the capacity of the mills to consume in each year the product of 6,000 acres was necessarily doubtful, although the seller asserted such capacity with great positiveness. Again, both parties must have realized that business or climatic conditions might

affect the practical possibility of carrying out the letter of the agreement for removal. We think it fairly apparent, from the context of an agreement to remove at a definite rate and of a provision recognizing failure to do so as within contemplation, that there was an intention on both sides, as somewhat of an afterthought, to annex to the positive agreement some measure of elasticity and to allow some grace to intervene between a breach of the express agreement to remove and the absolute forfeiture of the seller's right to the timber. The length of such period of grace has no expression in the contract, but, according to a principle of construction applicable to all contracts, that parties who stipulate for the doing of some act and do not specify the time therefor intend that it shall be done within a reasonable time, we are moved to the conclusion that the real intention was that the timber must be removed as specified, at the rate of 6,000 acres per year, but that if the seller in the course of events should not be able to accomplish it exactly within that period, he must do so within a reasonable time thereafter. No finding has been made as to whether such reasonable time has yet expired for the removal of all of the timber in due and diligent effort to comply with the spirit of the contract, in view of the situation of the parties and their known purposes with reference to the dealing in the land on one side and the timber on the other at the time of the making of their contract. We do not feel that the question has been tried sufficiently for us to safely undertake to make answer thereto from the record, or, if we should conclude that the reasonable time has not expired, to fix the limit thereof. We are persuaded that question should be carefully tried in the circuit, and that court should, from evidence already taken and such additional as may be introduced, decide when such period will expire, if it appears that it has not, and adjudge that at the termination of the period so found the rights of the defendant in all timber then remaining upon the plaintiff's lands shall terminate, and that meanwhile its right to enter and remove shall persist.

In considering the subject of a reasonable time to remove
the timber the court will doubtless need to consider the facts,
circumstances, and conditions surrounding the making of the
original contract as bearing upon the reasonableness of any
term; not only with reference to the reasonableness of a pe-
riod as a restriction upon the very obvious intention that the
Upham Company was to own and have a right to remove all
the timber, if it proceeded diligently, but also with reference
to impairment and delay of the Rib River Company's enjoy-
ment of the lands which it purchased in the manner it was
known to contemplate and intend enjoyment and use.

The trial below was characterized by the offer and admis-
sion *de bene esse* of a great deal of wholly improper and ir-
relevant evidence as to what the parties agreed on in parol and
as to their understanding of the meaning of the terms used in
the written agreement. Generally, verbal negotiations be-
tween parties who finally reduce their contract to writing are
incompetent, except so far as they are declaratory or eviden-
tiary of facts and circumstances in the light of which the con-
tract is made and in the light of which thereafter it may be
construed. The subject has had careful exposition in sev-
eral cases and proper distinctions noted. Some of those cases
are: *Brittingham & H. L. Co. v. Manson,* 108 Wis. 221, 84
N. W. 183; *Excelsior W. Co. v. Messinger,* 116 Wis. 549, 93
N. W. 459; *Corbett v. Joannes,* 125 Wis. 370, 388, 104 N.
W. 69; *Loree v. Webster Mfg. Co.* 134 Wis. 173, 114 N. W.
449; *Hackley Nat. Bank v. Barry,* 139 Wis. 96, 120 N. W.
275.

To avoid uncertainty, we think it best to express our opin-
ion on the rights and duties of the respective parties as to
taxes, although there seems to have been no disagreement
thereon prior to the commencement of this action. The last-
quoted clause of the land contract required the seller to pay
all taxes on the land until it had removed the timber from any
specific parcel thereof and given written notice of such re-
moval, or until a tract or tracts shall have been sold or con-

tracted by said second party to some third person or persons. The Upham Company and its assigns did pay all taxes that had become due up to the commencement of the action.   Our opinion is that the assignment of the contract from the Rib River Company to the plaintiff was not a sale of any parcel or parcels of land within the meaning of this clause.   That phrase, we think it obvious, had application to those sales to· individual settlers mentioned elsewhere in the contract and manifestly within the contemplation of the parties; hence that the duty of the defendant has persisted and will persist until it removes the timber, if the court shall finally decide that it. is entitled to more time, subject, of course, to the condition that actual sales to settlers of individual parcels will terminate that duty, except for the other agreement to pay any enhancement of the taxes on lands sold by reason of defendant's· timber remaining thereon after the sale.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings in accord with this opinion.

Timlin, J., took no part.