Blaha v. Borgman, 142 Wis. 43.

/ ⁊ ᵦ( ⁊₁ ⁊ᵥ /⁶ ᵧ⁊

BLAHA and another, Appellants, vs. BORGMAN, Respondent..
SAME, Respondents, vs. SAME, Appellant.

*February 2—February 22, 1910.*

(1, 6) *Appeal: Review: Findings.* (2–4) *Parol trust in land: Volun-*
*tary execution: Vendor and purchaser: Valid contract: Evidence:*
*Relation back: Lien of judgment: Priorities.* (5, 6) *Secondary*
*evidence: Letters: Destruction.* (7) *Deeds: Recording: Ac-*
*knowledgment.*

1. A finding reciting a claim to an equitable interest in land, but
declaring that neither of the claimants has in fact any legal or
equitable right, title, or interest, will be considered on appeal
as merely a conclusion of law, where the evidence as to detail-
facts is undisputed.

2. Although a trust in land declared by parol only is wholly unen-
forceable against the trustee, yet, if voluntarily executed by him
at any time, it will become validated as of the date of the origi-
nal oral agreement, and his deed will relate back to that date
and take precedence over any interest meanwhile derived from
him by another not an innocent purchaser for value,—in this
case over the interest acquired by a purchaser at an execution
sale under a judgment against the trustee, docketed after the
date of the oral agreement.

3. A binding written contract for the sale of land gives to the pur-
chaser an equitable interest consisting of the right to a convey-
ance upon performance by him, and where that performance
has been completed and the entire consideration paid by him
before the docketing of a judgment against the vendor, a subse-
quent conveyance by the vendor vests title in the purchaser as
of the date when he became entitled to the conveyance.

4. A letter by the owner of land offering to sell it for a certain price,
immediately responded to by the mailing to him of such price
and a blank deed, all prior to the docketing of a judgment
against the vendor, constituted a valid written agreement and
performance by the purchaser, so that the deed, though not exe-
cuted and delivered until after the docketing of such judgment,
related back and had priority over the lien of the judgment.

[5. Whether it is permissible to establish by parol the contents of
letters sent to a person in another state, with no proof whatever
of efforts or inability to obtain the originals, not determined.]

6. The conclusion of the trial court that the destruction of papers was blameless and consistent with ordinary care under the circumstances, and therefore rendered secondary evidence of their contents admissible, has on appeal the impregnability of a finding of fact.
7. A deed bearing upon its face such a certificate of acknowledgment as the statute requires is entitled to record, notwithstanding the date of the certificate is earlier than the date of the deed.

APPEALS from a judgment of the circuit court for Langlade county: JOHN GOODLAND, Circuit Judge.    *Reversed on plaintiffs' appeal.*

Action to quiet title. Answer, with counterclaim, asked same relief in behalf of defendant. Both plaintiffs and defendant deraign title from one C. F. Smith: defendant, by a sheriff's deed on execution under a judgment docketed in the circuit court for Langlade county, March 18, 1902; the plaintiffs, by two deeds from Smith, both dated prior to said March 18th, but delivered subsequently. These two deeds ran, respectively, to one John Hartl and John Lewis, an undivided half to each. It was claimed that Hartl's deed was in performance of a contract, resulting from correspondence, to convey the land upon consideration fully paid prior to the docketing of said judgment. The deed to Lewis was claimed to be in acknowledgment and execution of a parol trust agreement made at the time Smith obtained the land prior to 1892 to hold an undivided half thereof for Lewis and another.

The court found the contract to convey to Hartl to be established by the evidence, and that he therefore had an equitable title to the property prior to the docketing of the judgment, and owned an undivided half by title superior to that of the defendant. The court further held that Lewis had no interest in the land prior to the docketing of the judgment, the parol agreement therefor being void, and that therefore the half interest conveyed to Lewis was in Smith, subject to the lien of the judgment, and by the later execution

sale was transferred to defendant. Plaintiffs appeal from the whole judgment. Defendant appeals from that part thereof which establishes plaintiffs' title to an undivided half.

For the plaintiffs there was a brief by *Goodrick & Goodrick,* and oral argument by *A. B. Goodrick.*

For the defendant the cause was submitted on the brief of *Nash & Nash.* As to the admissibility of secondary evidence of the contents of the letters, they cited 17 Cyc. 529; *Diener v. Schley,* 5 Wis. 483, 527; *Orr v. Le Clair,* 55 Wis. 93; *Newell v. Clapp,* 97 Wis. 104; *Menasha W. W. Co. v. Harmon,* 128 Wis. 177; *Bonner v. Home Ins. Co.* 13 Wis. 677; *Wis. R. L. Co. v. Walker,* 48 Wis. 614; *Speiser v. Phœnix Mut. L. Ins. Co.* 119 Wis. 530; *Bruger v. Princeton & St. M. Mut. F. Ins. Co.* 129 Wis. 281; *Kohl v. Bradley, Clark & Co.* 130 Wis. 301; *Burton v. Driggs,* 20 Wall. 125; *Stebbins v. Duncan,* 108 U. S. 32; Jones, Ev. (2d ed.) §§ 17–19, 213, 214, 217, 218.

DODGE, J. 1. Considering first the plaintiffs' appeal: The judgment denying their title to the half interest covered by the deed to Lewis was predicated upon a finding reciting Lewis's and Forbes's claim to an equitable one-half interest, but declaring that neither J. C. Lewis nor C. E. Forbes had in fact any legal or equitable right, title, or interest. We cannot consider this part of the finding other than a conclusion of law, for the evidence as to detail facts is undisputed. It appeared that for two or three years prior to 1892 Smith was buying tax titles and thereby acquired the land in dispute amongst others. The testimony of Lewis is substantially that "myself and Forbes each had a quarter interest in such lands. Smith held the legal title. He held it pursuant to oral agreement between him, myself, and Forbes as to the subsequent disposition of the land. That agreement was that, as fast as the land was sold or redeemed, Smith was to receive one half interest and Forbes and I one quarter each

or the other half." Certainly, if the legal title were held by Smith under a written contract to the same effect as that shown by this evidence, Forbes and Lewis would be equitable owners of one half and their interest would be superior to any judgment or execution claim against Smith. Further, it appears without dispute that some time prior to 18th of March, 1902, Smith sent to Lewis a deed of the undivided one-half, which, owing to some infirmity or incorrectness, was returned by Lewis, and subsequently, and after the docketing of the judgment, Smith delivered the deed in evidence, a quitclaim deed of an undivided one-half interest to Lewis. All these facts are established without reference to certain secondary evidence of correspondence the admissibility of which is denied by defendant. The rule is thoroughly settled that a trust in land declared by parol only, although wholly unenforceable against the trustee, has yet enough of vitality so that if voluntarily executed by the trustee at any time it will become validated as of the date of the original oral agreement. Such a deed is said to relate back to the oral agreement and to take precedence over any interest meanwhile derived from the trustee by another not an innocent purchaser for value. *Main v. Bosworth,* 77 Wis. 660, 46 N. W. 1043; *Davenport v. Stephens,* 95 Wis. 456, 458, 70 N. W. 661; *Schumacher v. Draeger,* 137 Wis. 618, 119 N. W. 305. The situation disclosed by the above-quoted evidence falls so completely within the reasoning and the principles of the above-cited decisions that we can entertain no doubt that their rule controls it, nor that it establishes an equitable title in Lewis and Forbes prior to the docketing of the judgment under which defendant claims, upon which the execution sale has no effect, and for that reason, without considering others urged by plaintiffs, the portion of the judgment awarding defendant such an undivided one-half is erroneous and must be reversed.

2. Upon defendant's appeal the sole question of controversy is whether a binding written agreement satisfying the

statute of frauds for the sale of an undivided interest in the land to Hartl had been made by Smith prior to the docketing of the judgment. Defendant concedes that, if such existed, the judgment and execution sale thereunder can have no effect upon the equitable interest thereby created. That equitable interest was of course a right to a conveyance upon the performance of the purchaser's part of the contract. If that performance had been completed and the entire consideration paid prior to the docketing of the judgment, that equitable title was complete and comprehensive and left in Smith nothing but a bare, dry legal title which it was his duty to convey. Whenever he did so, such conveyance served to vest a legal title as of the date when the duty arose. *Church v. Smith,* 39 Wis. 492; *Krakow v. Wille,* 125 Wis. 284, 103 N. W. 1121; *Foster v. Lowe,* 131 Wis. 54, 60, 110 N. W. 829; *Gilbert v. Auster,* 135 Wis. 581, 116 N. W. 177; *Western L. & C. Co. v. Copper River L. Co.* 138 Wis. 404, 411, 120 N. W. 277.

The evidence received by the court over objection to establish this agreement consisted in part of oral testimony as to the contents of certain letters written to Smith by one Hayssen as agent for Hartl and of letters received by Hayssen which had been destroyed. The admissibility of this evidence is vigorously assailed by defendant's counsel. The question is a grave one whether it is permissible to establish by parol the contents of letters sent to a person in another state, with no proof whatever of efforts or inability to obtain the originals. Such question, however, we deem unnecessary of decision, since no such evidence will be considered. After some letters from Hayssen to Smith, the contents of which we disregard, there came from Smith to Hayssen a letter the contents of which was proved by parol over objection. It appeared that Hayssen, who was a farmer, of no business habits or business experience, was at that time county clerk; that while such clerk he made it a practice to retain correspond-

ence, check stubs, and other papers, but when he retired from
office in the following year, having no place convenient for
their preservation, he promiscuously destroyed such papers.
It was then a year after this correspondence had taken place;
there was no suggestion of probability that its preservation
would ever become important; defendant had made no move
to assert his judgment lien specifically against this land.
Search for the letter had failed to produce it at time of trial,
and the witness was reasonably sure that it had been destroyed
years before the trial in common with these other papers.
Upon such showing we think the foundation was laid for
secondary evidence of the contents of the letter. Inability
to produce the original was fully established, and the destruc-
tion of correspondence and other papers by Hayssen was of
such a character that a trial court in its discretion might well
consider it blameless and consistent with ordinary care under
all the circumstances. Such a conclusion has the impreg-
nability on appeal of a finding. *Hupfer v. Nat. D. Co.* 119
Wis. 417, 427, 96 N. W. 809. That letter expressed an offer
by Smith to sell his interest in this specific land for $100, to
which Hayssen, as agent for Hartl, immediately responded
by mailing to Smith an inclosure containing the $100 and a
blank deed, all prior to the docketing of the judgment. The
deed was not acknowledged and delivered to Hayssen until
subsequent to such docketing. We think this evidence fully
supports the court's finding that a written agreement signed
by the party to be charged had been completed and the entire
purchase price paid before the origin of the lien under which
defendant claims title, so that the entire equitable title had
been acquired by Hartl, and so that the deed to him when
executed and delivered related back to a date when defend-
ant's lien had no existence. From it must result affirmance
of that portion of the judgment from which defendant ap-
peals.

An objection is urged by the defendant to the evidence used

to establish the contents of several of the deeds upon which plaintiffs' title is asserted to be based. That evidence was the original books of record from the register's office disclosing the deeds; and also the testimony of the clerk who wrote those records to the effect that they were exact and correct copies of the originals. So far as the deeds were duly acknowledged so as to be entitled to record, this objection seems to be entirely met by sec. 4156, Stats. (1898), which provides that the record shall be received in evidence without further proof thereof. The deed from Smith to Lewis, so far as appears by the printed case, was so executed as to be entitled to record. It bears a certificate of acknowledgment dated March 1st, while the deed itself is dated March 7th. But this discrepancy, however it may be explained, does not overcome the fact that the paper on its face bore such a certificate of acknowledgment as the statute requires to entitle it to record. We think that record was properly admitted in evidence.

*By the Court.*—Judgment is reversed on plaintiffs' appeal and remanded with directions to enter judgment in accordance with the prayer of the complaint. The defendant to take nothing on his appeal.