EVANS, Respondent, vs. CRAWFORD COUNTY FARMERS' MU-
TUAL FIRE INSURANCE COMPANY, Appellant.

*November 12—December 4, 1906.*

*Vendor and purchaser: Transfer of title by operation of law, when
takes effect: Same, as to third person: Same, as affecting insur-
ance: Husband and wife: Implied agency of wife: Extent and
authority: Ratification by husband: Insurance: Proofs of loss by
wife: Fraud: False swearing.*

1. In a transfer of realty by operation of law the transition occurs
   when the last act requisite thereto takes place regardless of the
   date of the agreement, if there be one, to which all acts in that
   regard are referable.
2. In case of a transfer of realty pursuant to a prior agreement the
   rights of the parties as to strangers, in the absence of any agree-
   ment to the contrary between such parties, are referable to the
   actual transition of the property.
3. In case of an agreement to transfer land on which there is a
   building, the owner being insured against loss thereof by fire
   and a destruction of such building after such agreement and
   subsequently a consummation of such agreement as to what re-
   mains, in the absence of any contract to the contrary, as re-
   gards the insurer, the right to recover for the loss is in the ex-
   ecutory vendor.
4. The doctrine of relation operates to carry a transfer of realty
   back to the agreement to which it is referable so far as neces-
   sary to protect the equitable rights of the vendee, but strangers
   to the transaction cannot claim any benefit thereof.
5. If a husband absents himself from home, keeping his whereabouts
   unknown and leaving his property wholly under the care of his
   wife, she is his agent by implication of law (*ex necessitate*) to
   do those things which customarily are delegated to wives hav-
   ing such charge of property. Beyond that the wife cannot bind
   the husband as his general agent regardless of whether her act
   to that end be judicious or not from a business standpoint.
6. The authority of a wife as agent for her husband by implication
   of law does not, under any circumstances, extend to selling and
   conveying his real estate.
7. The rule that, if a wife contracts, assuming to act for her hus-
   band, so that the benefit comes to his hands and he does not
   disavow within a reasonable time, he is bound as having au-
   thorized the contract, does not apply to acts of the wife where

the benefit comes to her.  In such circumstances, as to general contracts, ratification by some affirmative act with knowledge of the facts recognizing the wife as having had authority to make the agreement is necessary to bind the husband.

8. If a wife is left in charge of insured property and a loss occurs, and the husband from the circumstances of his situation cannot be reached so as to enable him to make the proofs of loss, the wife may do so by implied appointment.

9. An agent, *ex necessitate*, to make proofs of loss under an insurance policy has no apparent authority beyond that necessary to effect the object of the implied appointment.  If in making the proofs she commits a fraud it does not become that of the husband unless he becomes a party to the deceit by ratifying her act with knowledge of the facts.

10. The terms of an insurance policy providing that false swearing of the assured in making the proofs of loss shall avoid the policy do not apply to an agent *ex necessitate* to make such proofs, unless the principal, with knowledge of the facts, ratifies the agent's act.

11. In case of the commission of a fraud by an agent as above suggested and the husband seeks to enforce the policy in good faith according to the proofs, he does not become a party to the deceit by the mere fact that he has knowledge of the claim of the insurer.  So long as he proceeds reasonably, in good faith, to enforce his claim he is not a participant in the fraud of the agent by ratification.

[Syllabus by Marshall, J.]

Appeal from a judgment of the circuit court for Crawford county: George Clementson, Circuit Judge.  *Affirmed.*

Action to recover on an insurance policy.  The complaint was in due form for the recovery of loss by fire insured against by the contract contained in the policy.  The defendant answered, among other things, that plaintiff had no insurable interest in the dwelling house, which was insured for $600, and that he forfeited all right to recover by reason of false swearing in making proofs of loss.  The policy contained conditions on both of such subjects.  The evidence was to the effect that plaintiff purchased the farm upon which the dwelling house insured was located at the agreed price of $4,600, $600 being paid down, and the vendor, A. J. Hag-

gerty, giving plaintiff a land contract in the usual form. The plaintiff went into possession and made permanent improvements on the farm to the value of about.$1,000. About a year and a half after the purchase was made, during which time plaintiff paid interest to the amount of $240, it was agreed between the parties to the contract and one Kane that the latter should take a deed of the premises from Haggerty and make a new land contract to the plaintiff similar to the one made by Haggerty, and that the former should be substituted for the latter. That agreement was carried out, the new contract bearing date October 3, 1901, or about six months prior to the actual transaction between Kane, plaintiff, and Haggerty. January 23, 1902, plaintiff took out the insurance policy through the agency of Mr. Kane, insuring the dwelling house for $600, the household furniture therein and household goods for $300, and provisions to the amount of $50. Several months thereafter plaintiff received an injury from which blood poisoning set in and he left home and remained away, his whereabouts being unknown, for about a year, when it was discovered that he was being cared for as an insane person in an asylum at Danvers, Massachusetts. Some time thereafter he recovered his normal condition and returned to his home. During his absence and on March 1, 1903, taxes upon the land and interest upon the land contract being in default and Mrs. Evans being somewhat embarrassed in respect to caring for the property, Mr. Kane proposed to give her $100 for a surrender of the property to him. She expressed a willingness to accept the proposition upon condition of her having till April 1, 1903, to dispose of her personal property, Mr. Kane to deposit the $100 with Thomas Coughlin and she to deposit with him the land contract and to vacate the premises in thirty days, the money and contract to be then delivered to the parties entitled thereto. The money and contract were deposited accordingly, but the contract was not deposited till after the fire occurred. Mrs.

Evans subsequently took the $100 and Mr. Kane took the contract. Proofs of loss under the policy were made by Mrs. Evans as agent for her husband, aided by Mr. Sime, president of the defendant company. Before plaintiff returned she commenced an action in his name to recover the loss. After such return the litigation was conducted by his direction. The cause was submitted to the jury for a special verdict containing questions agreed upon by counsel to cover the matters in controversy. The verdict rendered was as follows:

"(1) Did the plaintiff's wife, Mary Evans, knowingly and with intent to defraud the defendant company, make any false statements in the proofs of loss submitted to the defendant company, in regard to the amount, value, or condition of any of the property damaged or destroyed by the fire on March 5, 1903? A. No. (2) Did the plaintiff keep a good ladder of sufficient length to reach the roof of his dwelling house in the immediate vicinity of said house? A. Yes. (3) If you answer the second question 'yes,' answer this question: Was said ladder in the immediate vicinity of said house at the time of the fire? A. Yes. (4) Was the plaintiff's dwelling house provided with a scuttle or other means of reaching the under side of the roof from the inside of the house? A. Yes. (5) If the court should finally decide upon your findings and the law applicable to this case that the plaintiff is entitled to recover, at what sum do you assess the value of the personal property damaged or destroyed by said fire, to wit: (A) At what sum upon the household furniture? A. $51.26. (B) At what sum upon the wearing apparel? A. $50. (C) At what sum upon the bedding? A. $25. (D) At what sum upon the provisions? A. $25."

Defendant's counsel moved the court to change the answer to the first question from "No" to "Yes" and to strike out the answer to the fifth question, and for judgment in favor of the defendant on the verdict as so corrected. As an alternative defendant's counsel moved the court upon the exceptions taken on the trial to set aside the verdict and grant a new trial, and further to set aside the verdict and grant a

new trial upon various other exceptions specified. The motions were overruled. Thereafter judgment was rendered in favor of the plaintiff according to the special verdict and the defendant appealed.

For the appellant there was a brief by *Graves & Earll* and *Chas. H. Schweizer,* and oral argument by *Mr. Schweizer.*

For the respondent there was a brief by *Grotophorst, Evans & Thomas* and *Howe & Gilman,* and oral argument by *W. E. Howe* and *H. H. Thomas.*

MARSHALL, J. Respondent was the owner of the land on which the dwelling house mentioned in the policy was situated when the insurance was effected. He was in possession thereof under a land contract, was not in default, and had made some payments on such contract, and also had made valuable improvements on the land. The equitable ownership was in him, the legal title only being in his vendor in trust to secure the unpaid purchase money. That made him to all intents and purposes the owner of the premises, his interest being of sufficient dignity to satisfy the calls of a policy as to the interest of the insured being entire, unconditional, and sole ownership. *Johannes v. Standard F. Office,* 70 Wis. 196, 35 N. W. 298; *Wolf v. Theresa. V. Mut. F. Ins. Co.* 115 Wis. 402, 91 N. W. 1014. That situation was not efficiently changed prior to the destruction of the dwelling house by fire, unless the contract right to such property was theretofore extinguished by the acts of respondent's wife. Thus far there does not seem to be any controversy in the case.

It follows that when Mrs. Evans proposed to Mr. Kane, the then executory vendor, to surrender her husband's interest in the land for $100, upon condition of her being allowed till the first day of the succeeding April to dispose of the personal property thereon, and the deposit was made with a mutual agent, of the $100 by Mr. Kane, and of the land contract by Mrs. Evans, she to draw the money and Kane to

obtain the contract, upon surrender of the property being made, respondent was the owner of such property, and such ownership was not subject to extinguishment except by act or operation of law or by deed or conveyance in writing subscribed by him or by his lawful agent thereunto authorized in writing. Sec. 2302, Stats. 1898. An authorized surrender of the contract to Kane and delivery of possession of the premises to him and acceptance thereof with intention to extinguish the contract right would have satisfied the requisites of the statute as to transfer by operation of law.

It is contended by appellant's counsel that the agreement and deposit of the money before the fire, and the agreement and the withdrawal of the money by Mrs. Evans and abandonment of the land by her after the fire, satisfied all the requisites of a transfer of an interest in realty by operation of law as of the date of the agreement, so that when the property was destroyed plaintiff had no insurable interest therein and so could not legitimately recover on the policy.

Now, assuming, for the moment, that Mrs. Evans had authority to dispose of her husband's realty, as it is claimed she did, we are unable to see that there was a transfer thereof before the fire; and how a transfer thereafter could antedate the fire and supersede the cause of action on the policy which became fixed thereby, subject to conditions precedent as to enforcing the same, is not perceived. If the position of appellant be correct, then in any case where the owner of land on which there is a building insured against loss by fire gives a contract to another to sell the property to him, the sale to be consummated at a time stated but in the meantime such owner to remain in possession, and before the time arrives for such consummation the building is destroyed by fire, if the parties see fit to carry out their agreement, nevertheless, and do so, neither one of them can recover for the loss. The new one cannot because he was not the one insured, and the former cannot, though he owned the property at the time

of the fire, because his ownership was thereafter divested pursuant to an agreement made before the fire. We are not referred to any principle or authority to support that view. It is rather assumed the surrender of the premises to Mr. Kane, if there were such surrender in fact, and the withdrawal by Mrs. Evans after the fire of the $100 from the mutual agent, and deposit with him of the contract, by relation, operated to terminate plaintiff's interest in the land before the fire and as of the date of the agreement.

It is quite familiar that if one agrees, even verbally, to a sale of real estate and afterwards executes the agreement by conveying the land, for the purpose of protecting the equitable right of the executory vendee, the deed will be regarded as having taken effect as of the date of the agreement. 24 Am. & Eng. Ency. of Law (2d ed.) 276. Thus, though the actual transfer of the realty occurs at the time of the performance of the last act requisite thereto, by a fiction in the law, it is carried back, if necessary to do justice between the parties, to the date of the agreement consummated by the transfer, but that has no reference to the rights of either party to the transaction as regards strangers thereto. In *Farmers' Mut. Ins. Co. v. Graybill,* 74 Pa. St. 17, lands on which there was an insured building were sold under judicial proceedings requiring confirmation to consummate the sale. After the sale and before such confirmation the buildings were injured by fire. Upon such confirmation and a deed being made pursuant thereto, by the doctrine of relation the transition of the land, for some purposes, was carried back to the date of the sale, but not so as to make any change in the legal relations between the former owner and the insurance company, which became fixed in the meantime. It was held that the cause of action to recover on the policy accrued to the former owner. This court held in *Stahl v. Lynn,* 86 Wis. 75, 56 N. W. 188, that the doctrine of relation is only invokable by one person against another with whom he is in privity as regards the

particular contract. The conclusion on this branch of the appeal must be that in case of a transfer of title to realty by mere operation of law upon the acts of the parties, the change of title occurs at the instant all the circumstances exist requisite thereto. The law, in legal contemplation, executes the will of the parties, and as it cannot operate till the last act on their part shall have occurred, indicating irrevocably such will, that is the earliest moment at which by such operation the transition of title takes place. In the meantime the former owner, except as the equitable doctrine of relation may be necessary to protect the latter and those in privity with him, remains the owner of the property.

What has been said really renders unnecessary the question of whether Mrs. Evans had authority to sell her husband's interest in the realty and convey the same to Kane, but we will briefly give attention to that subject.

The rule is familiar that a wife under some circumstances may act to some extent as agent by implied appointment for her husband, and that such is the case when the latter had left his property in possession of the former with no one to care therefor but her. In such a case the authority of the wife is not referable merely to the marital relation, for she has no authority to bind her husband by contract, generally, on that account. The authority springs from the apparent necessities of the situation and is limited in its scope to that which, under the circumstances, can be reasonably presumed to be the intention of the husband. Her power to act at all is referable to a presumption of appointment and is fenced about, as in case of any other agency, by the apparent authority appropriate under the circumstances. In short, in contemplation of law the authority of the wife is based on the presumed intention of the husband. As that rests wholly in mere presumption, it goes no further than the customary authority which husbands usually confer under the same or similar circumstances. A very interesting discussion of that

subject is found in *Benjamin v. Benjamin,* 15 Conn. 347, cited to our attention by counsel. Beyond the authority mentioned the wife cannot bind her husband as agent *ex necessitate* regardless of whether her attempt to do so is or is not a judicious one from a business standpoint.

True, as said in effect in *Felker v. Emerson,* 16 Vt. 653, in case of extraordinary circumstances the presumed authority of the wife extends to all reasonable methods of meeting the extreme situation, but that is because such would be the natural inference as to what a husband would authorize to be done under such circumstances. But would that extend to permitting the wife in her discretion to sell the husband's real estate? We think not. It has never been held that it would so extend by any court that has dealt with the subject, so far as we can discover. Husbands do not usually, when absenting themselves from home so as to leave the entire care of their property to their wives, give the latter authority, in their own judgment, under any circumstances to sell and convey the realty. No such authority can be implied from the unexplained absence of the husband for any length of time. We state that as a legal principle, sufficiently established by the fact that there are no precedents to the contrary, and the fact that the requisites to a transfer of realty are such that authority of an agent to make such a transfer cannot rest on mere implication. That is consistent with all said in *Butts v. Newton,* 29 Wis. 632, and the other authorities called to our attention by appellant's counsel.

But it is argued by appellant's counsel that in case of an unauthorized transfer by a wife of her husband's property he will be bound unless' he seasonably disavows her act, and to that authorities are cited to the effect that when a wife in the absence of her husband contracts for his benefit and the benefit comes to his possession he will be bound unless within a reasonable time after becoming acquainted with the facts he disavows her act. *Hill v. Sewald,* 53 Pa. St. 271; *Ber-*

*wick v. Dusenberry,* 32 How. Pr. 348. That hardly fits this case because the proof does not show that the benefit of Mrs. Evans's contract came to the hands of respondent. When a wife, assuming to act for her husband but without authority so to do, contracts for her own benefit, ratification does not spring from neglect to disavow but from some affirmative recognition of her act as having been done by authority.

Error is assigned because the court refused to change the answer to the first question of the special verdict so as to find Mrs. Evans was guilty of knowingly and with fraudulent intent swearing falsely in regard to the personal property destroyed, and further error is assigned as to instructions on that branch of the case. In our view neither of such assignments of error is important.

It is conceded that Mrs. Evans had authority, presumably from her husband, to make the proofs of loss. He was absent from home. He did not know of the fire till long after the time required for making the proofs. She was left in charge of the property. Under those circumstances it is held that the wife may make the proofs of loss by implied authority of the husband, as his agent *ex necessitate. O'Conner v. Hartford F. Ins. Co.* 31 Wis. 160. The appellant in this case recognized that rule, received the proofs of loss made by Mrs. Evans, and defended upon the ground that fraudulent false swearing by the agent in such a case without the knowledge of the principal, in doing that which the former by implied authority is authorized to do in a proper manner, is to all intents and purposes the fraud of the latter; that the employment of an agent carries with it apparent authority to do all that the agent does in carrying out the object of the agency. True, the general rule is that a principal is bound by the acts of his agent within the scope or object of the employment, though such acts include false and fraudulent representations made in the course of such employment to accomplish its object, of which the principal has no knowl-

edge. Mechem, Agency, § 743; *Cobb v. Simon,* 124 Wis. 467, 102 N. W. 891. However, it is considered that the law is somewhat more tender of the interests of a principal who makes no appointment of an agent in fact but for whose benefit the law raises an implication of one, as in this case; that, on principle, the scope of the employment does not include acts which will defeat the very equity of the law in respect to the implied authority.

As a further answer to counsel's contention above discussed it seems that the construction of the policy clause to the effect that false swearing on the part of the assured will work a forfeiture, adopted in *Metzger v. Manchester F. Assur. Co.* 102 Mich. 334, 63 N. W. 650, is sound as regards an agency *ex necessitate.* We go no further than the facts of this case in adopting that view. That court held, under the rule that forfeitures are not favored in the law, that the policy clause referred to should be strictly construed and held not to apply to false swearing on the part of the agent for the assured, unless the latter is actually a party to the deceit by either authorizing it in advance or subsequently ratifying it. To the same general effect is *Mullin v. Vermont Mut. F. Ins. Co.* 58 Vt. 113, 4 Atl. 817. There it was held that the principal participated in the deceit of his wife, who acted as his agent, by taking her statement of household effects lost by fire and swearing to it as true without investigation. In the instant case it must be remembered that there was neither an express turning over by the principal to the wife as agent, of the matter of making the proofs of loss, nor a careless omission to verify her statement before it was delivered to the appellant. There was merely an agency, implied by law,—one arising from the necessities of the case to do the act essential to preserve the cause of action under the policy, to recover for the loss. In such circumstances nothing short of ratification with knowledge of the facts should be held to operate as an adop-

tion by the principal of the acts of the agent outside of those necessary to execute the object of the agency.

It is claimed that respondent did ratify what was done by his wife in taking up the litigation commenced by her, after his return, and pursuing it to judgment without withdrawing so much of the claim as was fraudulently made, if any. It does not seem so. He found the cause of action at issue in respect to the claim of fraud. There is nothing to show that he did not take up the matter, in good faith, where he found it. He was not obliged, at his peril, to take the allegations which he found in appellant's answer as true. The questions as agreed upon, submitted to the jury, did not contain any inquiry on this subject. So it must be assumed, from the attitude of counsel at the trial, that there was no such question then supposed to be involved. Certainly, under the circumstances, there was no ratification as a matter of law and the court did not commit any error in not submitting to the jury a question in respect to the subject, as matter of fact.

As before indicated, our view of the case renders it unnecessary to discuss the subject argued at much length in the briefs of counsel as to whether the answer to the first question in the special verdict has credible evidence to support it. We do not pass on that. If the proofs of loss included property not injured or destroyed it was all eliminated by the verdict, and the inclusion of it, whether by mistake or fraud, under the circumstances, did not work a forfeiture as to the respondent.

*By the Court.*—The judgment is affirmed.