MELVILLE BARRON, Appellee, v. FLORA E. McCHESNEY et al.,
Appellants.

**HUSBAND AND WIFE:** Agency Ex Necessitate. A wife who, during
the confinement of her husband in a hospital for insanity, remains
in possession of her husband's property, will be presumed, from
necessity, to have authority from her husband to accept delivery on
his behalf of a mortgage which secures a pre-existing, unsecured,
and practically matured indebtedness to him, even though the
mortgage materially extends the maturity of the debt.

*Appeal from Jefferson District Court.*—D. M. ANDERSON, Judge.

OCTOBER 17, 1924.

THIS is an action by the appellee to foreclose a mortgage
executed by C. M. McChesney and wife. The action is brought
against the administrator of the mortgagor and against his
widow and heirs. The sole defense interposed is that the mort-
gage never became effective, for want of valid delivery. There
was a decree for the plaintiff, and the defendants have ap-
pealed.—*Affirmed.*

*Ralph H. Munro* and *Simmons & Simmons,* for appellants.

*R. C. Leggett* and *Cornell & Steck,* for appellee.

EVANS, J.—The mortgage in question was duly executed on
January 10, 1922. It was given to secure a pre-existing debt
for $10,000. The mortgagee plaintiff was the son-in-law of the
mortgagor, and held his prior obligation for the debt. Such
prior obligation was unsecured, and was to mature within a few
months. The mortgage and note sued on were drawn to mature
in the year 1925. The mortgage was junior to another existing
mortgage. At the time of the execution of the mortgage, the
plaintiff was under temporary disability from sickness and in-
sanity, and was at that time confined in a hospital. His wife
remained at home on the farm, and assumed to take charge of

plaintiff's property during his absence. The mortgagor intended a delivery, and attempted to make the same by a formal delivery of possession to his daughter, who was the wife of plaintiff. He further proposed to cause the mortgage to be recorded. He received the same from the wife, and put the same in the hands of another daughter, to be deposited in the mail, duly addressed to the county recorder, with direction to record the same. Such mortgage reached the county recorder on the 13th day of January, within an hour after the mortgagor had taken his own life. The provision of the note and mortgage upon which the defense rests is that which deferred the time of payment. The argument is that this extension of time was never assented to, and that this was essential to an effective delivery. It is conceded, in effect, that the attempted delivery by the mortgagor would have been effective as such, without formal acceptance by the mortgagee, if the provision for deferred payment had not been incorporated. Particular reliance is placed upon the holding in *National State Bank v. Morse, Wilson & Co.*, 73 Iowa 174. The further step in the argument is that the plaintiff, being at that time insane, was under disability, and could not contract, and therefore could not accept the burdensome provisions of the mortgage.

The appellee argues that the plaintiff ratified the attempted delivery after the removal of his disability. This argument falls short of a solution of the question presented, because the alleged ratification was made only after the death of the mortgagor. If such ratification was essential to render effective the delivery, then the delivery was not effective at the time of the death of the mortgagor. If it was not presumptively effective at that time, we see no way whereby it could become effective by act of the mortgagee thereafter.

The real question presented is whether a person under temporary disability through insanity or otherwise may, under any circumstances, and for any purpose, however limited, be represented by another; and whether an assumption of authority by such other person may, as a matter of law, be presumed to any extent, having reference to the particular circumstances of the particular case. It is broadly true that complete insanity ter-

minates a general agency. The rule contended for by appellant is stated in 30 Corpus Juris 615, Section 164, as follows:

"The fact that the husband's mental or physical condition is such that he is incapable of transacting business does not constitute the wife his general agent nor vest her with a general and unlimited authority as to all his affairs."

The same rule is elaborated somewhat in the case of *Evans v. Crawford County F. M. Fire Ins. Co.*, 130 Wis. 189 (109 N. W. 952), as follows:

"The rule is familiar that a wife, under some circumstances, may act to some extent as agent by implied appointment for her husband; and that such is the case when the latter had left his property in possession of the former, with no one to care therefor but her. In such a case, the authority of the wife is not referable merely to the marital relation, for she has no authority to bind her husband by contract, generally, on that account. The authority springs from the apparent necessities of the situation, and is limited in its scope to that which, under the circumstances, can be reasonably presumed to be the intention of the husband. Her power to act at all is referable to a presumption of appointment, and is fenced about, as in case of any other agency, by the apparent authority appropriate under the circumstances. * * * Beyond the authority mentioned, the wife cannot bind her husband as agent *ex necessitate*, regardless of whether her attempt to do so is or is not a judicious one from a business standpoint."

The foregoing citations do not quite reach the point involved. There are exigencies of calamity and disability which not infrequently befall a person, where considerations of humanity require that some friendly person shall assume authority to protect the person and conserve the property of the victim of misfortune. A bystander may assume authority to call a physician to the aid of an unconscious patient. He may likewise assume authority to conserve the property of the unconscious one. Within appropriate limits, the law will sustain by presumption the authority thus assumed. The scope of such an agency is very limited, and is no broader than the exigencies which call it into being. In this case, the plaintiff was taken

in mental derangement to the hospital, from which he returned a few weeks later. The wife remained at the home on the farm and looked after all the property and transacted the current daily business. To that extent, at least, she was fairly within the scope of authority which the law would presume in her favor. The general scope of such authority was to conserve the property rights of her husband. It did not extend to the initiation of new enterprises. It was in an attempt to conserve her husband's property that she accepted delivery of the mortgage. The mortgagor had become insolvent. He was owing a debt to her husband. It was unsecured. The mortgagor tendered the security. This was plainly beneficial to her husband and conserving in character. The burden this benefit carried was of a minor character, as compared with the benefit conferred. No substantial conservation of property is possible without some burden of disadvantage and expense. If live stock is to be conserved, grain must be provided and perhaps bought for that purpose. Was the act of the wife in this case in accepting the mortgage, under the condition of the extension of time, so manifestly advantageous to her husband and so incidental to the conservation of his property as to come within the limited scope presumed by the law under such circumstances? This becomes somewhat a question of fact, to be determined by the particular circumstances of the particular case. The trial court held to the affirmative, and we are disposed to concur in that view.

We prefer, however, to put our holding upon the ground first stated: that the law will presume authority, within a very limited scope, of the wife *ex necessitate,* to conserve the property interest of her husband during his temporary disability; and that the acceptance of this mortgage was fairly within the scope of that authority. It is to be conceded that legal authorities on this proposition exist only by implication. But we find nothing in any authority that runs counter to it; and we deem it in plain accord with universal human experience and practice, and that authority thus assumed is never challenged by the beneficiary principal. The decree entered below is, accordingly, affirmed.—*Affirmed.*

Arthur, C. J., and Preston and Faville, JJ., concur.