IFC COLLATERAL CORPORATION, Appellant, v. COMMERCIAL UNITS, INC., and others, Respondents: LAYTON PARK BUILDING & LOAN ASSOCIATION and others, Defendants: MANLO BUILDING CORPORATION, Third-Party Defendant and Respondent.*

*No. 84. Argued March 29, 1971.—Decided May 4, 1971.*
(Also reported in 186 N. W. 2d 214.)

* Motion for rehearing denied, with costs, on June 25, 1971.

For the appellant there were briefs by *Redford, Dill & Zillmer,* attorneys, and *Ward Dunphy* of counsel, all of Milwaukee, and oral argument by *Mr. Dunphy.*

For the respondents there was a brief by *Charne, Glassner, Tehan, Clancy & Taitelman,* and oral argument by *Ronald S. Jacobs,* all of Milwaukee.

HANLEY, J. The issues raised by appellant on this appeal are:

(1) Can the doctrine of relation back be applied to cut off interests acquired by strangers in the interim;

(2) Did IFC fail to use due diligence in its search for title; and

(3) Is the possibility that IFC may have a suit against the title company a proper factor for the trial court to consider?

*Application of doctrine of relation back.*

The appellant contends that under the facts of this case it was entitled to the benefit of the equitable doctrine of relation back. Under the fiction of that doctrine, the deed from Lozoff to Commercial Units, on November 22, 1966, relates back to the original granting of the

mortgage on April 29, 1966. Thus, if the doctrine is applicable, title was in Commercial Units on April 29, 1966; and, therefore, in August of 1966, when the judgments were docketed, Lozoff was no longer the owner of the Atrium property; and hence the liens of the judgment creditors could not attach to what Lozoff did not own.

The respondents contend that since they had complied with sec. 270.79 (1), Stats., they were entitled to priority. This contention is premised on the fact that legal title to the Atrium property was still in Lozoff at the time the respondents docketed their judgments.

Sec. 270.79 (1), Stats., provides in part as follows:

**"Lien of judgment; priority, statute may be suspended.** (1) Every judgment, when properly docketed, and the docket gives the judgment debtor's place of abode and his occupation, trade or profession shall, for 10 years from the date of the entry thereof, be a lien on the real property (except the homestead mentioned in s. 272.20) in the county where docketed, of every person against whom it is rendered and docketed, which he has at the time of docketing or which he acquires thereafter within said 10 years. . . ."

The trial court, in finding that the judgment creditors were entitled to priority over the security interest of the appellant, made the following conclusions of law:

(1) That IFC failed to use due diligence in its search for title at the time the mortgage was executed;

(2) That it was the "agent or agents" of IFC who caused the mistake as to title; and, therefore, IFC was not entitled to equitable relief;

(3) That whether Emanuel Lozoff was mistaken as to title to the property or whether he deliberately misrepresented the proper title to the property to the plaintiff were matters involved in the plaintiff's negotiations with Lozoff and Commercial Units, Inc., that gave rise to the mistake and that, therefore, as between the innocent

parties in this action, the plaintiff is not entitled to the equitable relief;

(4) . . .

(5) That as to the defendants, Emanuel Lozoff, Elaine Lozoff and Commercial Units, Inc., equitable title to the Atrium Building vested in Commercial Units, Inc., from April 29, 1966; and, as to the defendants, A. I. C. Financial Corporation, Milwaukee Acceptance Corporation and The Home Bank, title to the Atrium Building vested in Commercial Units, Inc., from November 22, 1966, at the time that a deed was given from Lozoff to Commercial Units, Inc.; and

(6) That the lien of plaintiff's mortgage is effective from April 29, 1966, as against all parties, except A. I. C., Milwaukee Acceptance Corporation and The Home Bank; and, except as to those mechanic's lien claimants having filed liens for work performed and material furnished prior to April 29, 1966.

The trial court gave three reasons why the appellant was not entitled to the doctrine of relation back. The trial court first stated that his understanding of the law was that the doctrine of relation back can only be applied in a suit between the parties to the transaction (in this case, a conveyance) and that it cannot be applied to cut off interests acquired in the property by strangers to the transaction during the interim. Secondly, the trial court found that even if the doctrine could be applied to the prejudice of strangers, it should not be so applied here because it was an equitable doctrine and IFC's lack of diligence in searching for title disqualified it for the aid of equity. Thirdly, the trial court was of the opinion that if IFC lost in this suit, then it would have an action against the title company which supplied it with the faulty title report.

In concluding that the doctrine of relation back can never be applied when it would extinguish the rights of

strangers acquired in the interim, the trial court relied primarily on the case of *Evans v. Crawford County Farmers' Mutual Fire Ins. Co.* (1906), 130 Wis. 189, 109 N. W. 952.

The trial court's reliance on *Evans* is misplaced, and he draws from it a rule much broader than the one actually enunciated therein. The trial court felt that *Evans* held that the doctrine of relation back may not be applied to prejudice interests acquired by strangers in the interim. We do not agree. The husband in *Evans* was certainly a stranger to the deal between his wife and the purchaser of his property. But he was not one who acquired an interest in the property during the interim between the oral agreement and the completion of the sale. His interest was in existence *before* any transaction between his wife and the buyer. In addition to the above distinction, the *Evans Case* had nothing to do with the question of creditors' priorities.

One who obtains an equitable interest for value given, which later ripens into a legal interest is entitled to priority over a judgment creditor who dockets his judgment in the interim period.[1]

An equitable mortgage arises when, for value received, one party attempts to convey a security interest in his land to another and such attempt fails because of some error or omission in the documents which prevents the transaction from being denominated a legal mortgage. Osborne, p. 50, sec. 32.

Equitable mortgages can be turned into legal mortgages by supplying the omission or correcting the error

[1] *Blaha v. Borgman* (1910), 142 Wis. 43, 124 N. W. 1047; *Lewis v. Banking Comm.* (1937), 225 Wis. 606, 275 N. W. 429; *Mueller v. Novelty Dye Works* (1956), 273 Wis. 501, 78 N. W. 2d 881; Osborne, *Law of Mortgages* (2d ed. hornbook series), pp. 326, 327, sec. 189; 9 Thompson, *Real Property*, pp. 94, 101, 102, sec. 4675; 2 Pomeroy, *Equity Jurisprudence* (5th ed.), pp. 1054–1058, secs. 721 and 721a.

which prevented the mortgage from being a legal one in the first instance. And, generally, the correction will be held to relate back to the date of the original transaction, so that the mortgagee will be deemed to have had a legal mortgage from the time of the creation of the equitable mortgage. Persons acquiring interests in the property during the interim (between the date of the equitable mortgage and the date on which it was corrected into a legal mortgage) are usually subordinated to the interest of the mortgagee in the property. The well-recognized exception to this rule is the bona fide purchaser for value without notice who acquires his interest in the property during the interim. A judgment creditor who obtains a lien on the land by docketing his judgment is not a purchaser for value. *Main v. Bosworth* (1890), 77 Wis. 660, 46 N. W. 1043; *Blaha, Lewis* and *Mueller, supra.* The fact that a judgment creditor may be without notice of a prior equitable interest when he dockets is not sufficient to give his lien priority over that of a prior equitable mortgagee. The failure of notice does not inure to the benefit of a subsequent judgment creditor because he does not part with any value in reliance on the misleading state of his debtor's title.

The above-stated propositions regarding the relative rights of prior equitable mortgagees as against subsequent judgment creditors are widely recognized in case law as well as secondary authority. For example, Thompson, speaking of a mistake which prevents a mortgagee's interest from being a legal one, states at pages 101 and 102, sec. 4675:

". . . The mistake may be corrected, too, against a subsequent judgment creditor; but not against a purchaser of a subsequent judgment, who has invested his money in the purchase of the judgment upon the faith of the apparent lien upon the land. . . ."

The same rule of equity is found in Pomeroy, page 1058, sec. 721a:

". . . Similarly, it is held that where land is omitted from a mortgage by mistake, the lien of a subsequent judgment against the mortgagor is still subject to the equity of the mortgagee and to the mortgage when corrected. This is a correct application of the equitable doctrine. [The filing of the judgment only creates a lien upon the interest in the real estate owned by the judgment debtor at the time, and if, prior to the filing, the judgment debtor has mortgaged said real estate, the lien created by filing such judgment is subordinate to such mortgages.] . . ."

The same rule has been recognized in Wisconsin. In *Blaha v. Borgman, supra,* one Smith was the record owner of a piece of property. Smith made an oral agreement with Lewis to convey a one-half interest in the property to him and was paid consideration in reliance on the oral promise. Later Smith sent a deed to Lewis which purported to convey a one-half interest to Lewis. However, the deed was defective and could not serve as an instrument of conveyance. Lewis sent the deed back to Smith, asking him to correct and return it. Before the correction and return was accomplished, a creditor of Smith's obtained a judgment against Smith and docketed it. At the time of docketing, full record title was still in Smith; and on this basis the judgment creditor argued that his lien attached to all the property owned by Smith and was superior to the interest of Lewis who had received a valid deed from Smith after the docketing took place. On appeal, this court held for Lewis and stated, with reference to the correction deed, at page 46:

". . . Such a deed is said to relate back to the oral agreement and to take precedence over any interest meanwhile derived from the trustee *by another not an innocent purchaser for value. Main v. Bosworth,* 77 Wis. 660,

46 N. W. 1043; *Davenport v. Stephens,* 95 Wis. 456, 458, 70 N. W. 661; *Schumacher v. Draeger,* 137 Wis. 618, 119 N. W. 305. . . ." (Emphasis supplied.)

In *Mueller v. Novelty Dye Works, supra,* the appellant signed a contract for the purchase of land and made a down payment in March of 1955. In April, 1955, a creditor of the seller of the land, who still had legal title thereto, docketed a judgment against the seller. In June of 1955, the buyer paid the purchase price and received a warranty deed from the seller.

The court in *Mueller* turned to *Blaha* and found for the purchaser. The court stated, at page 505:

"We recognize that the facts in *Blaha v. Borgman,* 142 Wis. 43, 124 N. W. 1047, differ from those in the present case in so far as there the whole purchase price was paid before the docketing of the judgment. However, the principle of equitable conversion as applied there is equally applicable here (p. 46): 'The rule is thoroughly settled that a trust in land . . . if voluntarily executed by the trustee at any time . . . will become validated as of the date of the original oral agreement. Such a deed is said to relate back to the oral agreement and to take precedence over any interest meanwhile derived from the trustee by another not an innocent purchaser for value.' . . ."

From the above-cited authorities, it is very clear that the equitable fiction of relation back can be and has been applied to subordinate the liens of judgment creditors to prior interests when such interests are acquired for value. The trial court's conclusion to the contrary was in error.

The respondents take the position that the doctrine of relation back simply cannot be applied to the prejudice of judgment creditors. They rely on the following language from *R. F. Gehrke Sheet Metal Works v. Mahl* (1941), 237 Wis. 414, 421, 297 N. W. 373:

". . . While the question has not been considered by this court it is held by the great weight of authority that the lien of a judgment is superior to all conveyances of and liens on the debtor's land which are made or accrue after the judgment lien has attached. . . ."

The respondents interpret the above quotation as holding that prior equitable interests cannot be found superior to liens of judgment creditors. The facts in the case support that conclusion. In that case, one party loaned money to another with no mention of any security therefor. Later a judgment was docketed against the debtor's land. After such docketing, the debtor attempted to deed the land to the party who made the loan. The court held for the judgment creditor without referring to the doctrine of relation back. This is perfectly consistent with *Blaha* and *Lewis* because in those cases there was some earlier transaction which purported to be a conveyance of an interest in land. In *Gehrke*, there was no such prior transaction to which the subsequent deed could "relate back." In short, merely loaning one money does not vest the lender with an interest in the land of the debtor, equitable or otherwise.

Respondents argue that *Blaha* can be distinguished from the present case on the fact that the prevailing party in *Blaha* was a purchaser, whereas the appellant here is only a mortgagee. The distinction is accurate but not controlling. A purchaser obviously acquires a greater interest (title) than does a mortgagee (only a security interest). But the controlling question, in equity at least, is not how big the prior interest is, but rather whether the holder of the prior interest has paid value for it, regardless of its size.

*Question of due diligence in title search.*

In arguing that IFC failed to use due diligence in its search for title, respondents cite the following language

from *Bump v. Dahl* (1965), 26 Wis. 2d 607, 614, 615, 133 N. W. 2d 295, 134 N. W. 2d 665:

"A purchaser of land has three sources of information which he should consult to learn of rights to the land he is about to purchase: (1) The records in the office of the register of deeds where the basic rights involved are recorded; (2) other public records to discover rights which usually are not recorded in the office of the register of deeds, *i.e.*, judgments and liens; and (3) the land itself, to discover by observation the rights which arise outside of the recording system by virtue of possession or use. On the problem generally, see Van Alstyne, Land Transfer and Recording in Wisconsin, 1955 Wisconsin Law Review, p. 223. Under the recording acts a conclusive presumption arises that a purchaser knows every conveyance of property recorded which affects the title to the property, whether or not the purchaser examines the public records. *Kidder v. Pueschner* (1933), 211 Wis. 19, 247 N. W. 315; *Fallass v. Pierce* (1872), 30 Wis. 443. . . ."

If this were a suit between the appellant and someone who had an interest in the property on April 29, 1966, when appellant acquired its interest, then the above quote would be pertinent. But since respondents had no interest of any kind in the property on April 29, 1966, they cannot assert appellant's failure to ascertain the true state of its mortgagor's title. Moreover, while respondents speak of lack of diligence, it is pertinent to note in weighing the equities in this case that all of the respondents advanced money to Lozoff on the basis of a bare promise to repay. They could have demanded a mortgage, as did the appellant, to secure their loans, but they chose not to. The appellant, while it made a mistake as to title, was certainly more diligent than respondents in obtaining security for its loan.

The respondents' rights are established by sec. 270.79 (1), Stats., subject to the application of the equitable doctrine of "relation back." The appellant's alleged

failure to use diligence in the title search in no way affected the respondent's rights. It certainly did them no harm. Negligence, therefore, if any there was, committed by appellant caused no harm to respondents and is immaterial.

*Appellant's possible action against the title company.*

The trial court apparently presumed that IFC would have a successful action against the title company which supplied it with the erroneous title report. There was no testimony in the record to support this conclusion. The title company was never made a party to this action. No evidence was offered showing who paid for the report or who prepared it; and it was not clear from the record whether the title company was acting as Lozoff's agent or as appellant's agent. Under the circumstances, we believe the trial court's conclusion that IFC should not get relief in this suit because it could recover its losses elsewhere was unsubstantiated.

We conclude that the trial court was in error in granting priority to the judgment creditors, who docketed their judgments in August, 1966, over the mortgagee lien of the appellant.

*By the Court.*—That part of the order granting priority to the judgment liens of Milwaukee Acceptance Corporation, A. I. C. Financial Corporation and The Home Bank is reversed.