WEST FEDERAL SAVINGS & LOAN ASSOCIATION, Plaintiff, v. INTERSTATE INVESTMENT, INC., and others, Defendants and Respondents: SORCE and others, Defendants: A. I. C. FINANCIAL CORPORATION and another, Defendants and Appellants.

*No. 33. Argued February 26, 1973.—Decided March 27, 1973.*
(Also reported in 205 N. W. 2d 361.)

---

For the appellants there were briefs and oral argument by *Aaron E. Goodstein* of Milwaukee.

For the respondent Milwaukee Western Bank there was a brief by *Edward S. Grodin,* attorney, and *Harold E. Haltner* of counsel, both of Milwaukee, and oral argument by *Mr. Haltner.*

HALLOWS, C. J. The facts are somewhat complicated, but essentially they are as follows: On June 15, 1962, Anna Skibosh, as vendor, entered into a land contract with Auto Acceptance & Loan Corporation (Auto Acceptance) for the sale of premises in Brookfield. Two days later Auto Acceptance assigned its vendee's interest to Interstate Investment, Inc. (Interstate). Harry W. Kaminsky was both president of Auto Acceptance and vice-president of Interstate. The land contract and the assignment were recorded in the office of the register of deeds. About seventeen months later, on November 15, 1963, Interstate executed a quitclaim deed to the property naming Joseph A. Sorce as grantee, although at that time Interstate's interest was only that of an assignee of the vendee under a land contract. The quitclaim deed was apparently delivered to Auto Acceptance, was not recorded and handwritten upon it was a notation, "Do not record." In typewritten language the following appeared: "This deed is subject to the terms of the attached letter." The attached letter was on Auto Acceptance's stationery from Mr. Kaminsky to Mr. Sorce and stated the deed was held in trust by Auto Acceptance until such time as all Sorce's accounts with Auto Acceptance together with real estate taxes and interest had been paid in full; and upon such payment the deed would be turned over to Sorce subject to any existing first mortgage.

Upon fulfillment of the land contract terms, Anna Skibosh conveyed the property to Auto Acceptance by warranty deed on February 19, 1964, and Auto Acceptance in turn conveyed the premises by warranty deed to Interstate. Both these deeds were recorded on February 24, 1964. However, on February 20, 1964, a few days before the recording of the deeds, Interstate mortgaged the premises to West Federal Savings & Loan Association (West Federal), although Interstate had previously de-

posited a quitclaim deed to the property with Auto Acceptance in escrow for the benefit of Sorce. About ten months later, on December 10, 1964, Sorce mortgaged the premises to Auto Acceptance although the record does not show that the quitclaim deed had been delivered to him by Auto Acceptance. Nor is it clear why Sorce should mortgage the premises to Auto Acceptance. Auto Acceptance assigned its interest in this mortgage to A. I. C. Financial Corporation (A. I. C.) who, about a year and a half later, on June 17, 1966, assigned the mortgage to Milwaukee Acceptance Corporation (Milwaukee Acceptance). These mortgages were recorded.

About two years later, on December 5, 1968, West Federal commenced this foreclosure action against Interstate and Sorce, A. I. C., and Milwaukee Acceptance were also made defendants. A judgment of foreclosure was obtained, the property sold, and a surplus of $23,254.32 resulted. Prior to the foreclosure, numerous judgments were docketed against both Interstate and Sorce. On May 12, 1970, the court ordered all persons claiming an interest in the surplus to file their claims. These claimants naturally fell into two classes—those claiming through Sorce and relying upon the unrecorded quitclaim deed from Interstate and those claiming through Interstate and relying upon its record title as owner and mortgagor.

Those claiming through Sorce argue the unrecorded quitclaim deed from Interstate to Sorce was a valid conveyance despite the escrow and was prior in time to the creation of any liens of creditors claiming through Interstate. It is argued the failure to record the quitclaim deed did not affect its validity but merely went to the issue of priority of claims. *Tenney Telephone Co. v. United States* (7th Cir. 1936), 82 Fed. 2d 788. And while an unrecorded conveyance is void "against any subsequent purchaser in good faith and for a valuable consideration . . . whose

conveyance shall first be duly recorded," [1] it is valid against judgment creditors since they are not bona fide purchasers for value. *See IFC Collateral Corp. v. Commercial Units, Inc.* (1971), 51 Wis. 2d 41, 186 N. W. 2d 214; *Stanhilber v. Graves* (1897), 97 Wis. 515, 73 N. W. 48. In our view of the facts the trial court was correct in its decision because the evidence does not show there was ever a valid delivery of the quitclaim deed to Sorce so as to convey title to the property.

An escrow, as a general rule, is created when the grantor parts with all dominion and control of a deed by delivering it to a third person [2] or a depository with instructions to deliver the same to the named grantee upon the happening of certain conditions. 28 Am. Jur. 2d, *Escrow,* p. 41, sec. 28; Tiffany, *The Law of Real Property, and Other Interests in Land,* p. 454, sec. 533 (abridged ed. 1970). When the conditions of the escrow have been met, the depository becomes the agent of each party under a duty to deliver. 28 Am. Jur. 2d, *Escrow,* p. 41, sec. 28. If the depository fails to deliver when he should, the delivery is held to have legally occurred. 4 Tiffany, *The Law of Real Property* (3d ed. 1939), p. 227, sec. 1049. If the depository delivers without the satisfaction of the conditions, it is generally held that no valid deed passes unless, at least in some states, the rights of bona fide purchasers have intervened. *See* 28 Am. Jur. 2d, *Escrow,* pp. 42, 43, sec. 29. *But see* 9 Wigmore, *Evidence,* p. 67, sec. 2420. However, in *Franklin v. Killilea* (1905), 126 Wis. 88, 104 N. W. 993, this court held that where there was no negligence on the selection of a depository, his delivery contrary to the conditions of the deposit did not give the instrument any legal force and provided no protection to subsequent bona fide purchasers.

---

[1] Sec. 706.08 (1), Stats.

[2] *See George Williams College v. Williams Bay* (1943), 242 Wis. 311, 7 N. W. 2d 891; *Chaudoir v. Witt* (1920), 170 Wis. 556, 170 N. W. 932, *rehearing,* 174 N. W. 925.

The appellants argue the depositing of the quitclaim deed with Auto Acceptance was a valid conveyance to Sorce, the condition being invalid because it was for the benefit of Auto Acceptance and not the grantor, who thus irrevocably vested title and surrendered control of the deed. This argument is not sustained by the facts. The quitclaim deed contained a notation that it should not be recorded and contained conditions apparently acceptable to the grantor. Although the record is unclear as to why Interstate wanted a condition for the benefit of Auto Acceptance, it is nevertheless a valid condition of the grantor. *See Tweeddale v. Tweeddale* (1903), 116 Wis. 517, 93 N. W. 440.

The type of delivery involved in this case is one which depends upon the happening of an uncertain event. In such a case no title passes until the condition is satisfied and the delivery is made by the depository. *Prutsman v. Baker* (1872), 30 Wis. 644, 11 Am. Rep. 592. In addition, to be valid in Wisconsin an escrow of a deed to real estate must be accompanied by an agreement to convey the land which satisfies the statute of frauds. *Campbell v. Thomas, Imp.* (1877), 42 Wis. 437, 24 Am. Rep. 427; *Zoerb v. Paetz* (1908), 137 Wis. 59, 117 N. W. 793. We do not consider the letter attached to the quitclaim deed was sufficient for this purpose but we do not rest our opinion on this narrow ground except to note that no contract to convey between Interstate and Sorce appears in the record and we are at a loss to know why a quitclaim deed was executed.

To be successful, the appellants must prove that Sorce at least had title to the property. There is no evidence that the condition requiring Sorce to pay his indebtedness to Auto Acceptance was satisfied and no evidence that the quitclaim deed was delivered by Auto Acceptance as depository to Sorce. The quitclaim deed was never recorded and stands as a "fugitive" in the history of the title to the property. The acts of the parties, which may

show delivery or satisfaction of the conditions,[3] are so inconsistent that they do not prove delivery of the quitclaim deed to Sorce. The act of Interstate in mortgaging the premises to West Federal after delivery of the quitclaim deed to Auto Acceptance in escrow would tend to show that no valid escrow was created by Interstate and the escrow was a sham. If a valid escrow was in fact intended to be created, then Interstate acted wrongfully in mortgaging the premises to West Federal, but West Federal is protected by the Recording Act. Thus in one of these transactions, Interstate acted dishonestly. Assuming the escrow was intended to be a valid means of conveyance, the chain of title is still broken. After delivery of the quitclaim deed to Auto Acceptance, Sorce executed and Auto Acceptance accepted a mortgage on the premises, which mortgage was then assigned to A. I. C. These acts might tend to show the condition had been satisfied and Auto Acceptance had delivered the deed to Sorce, who on the strength thereof borrowed more money from Auto Acceptance and gave the mortgage to secure it. Because of the apparent duplication of activities of Auto Acceptance and Interstate and their interrelation, one might infer that Auto Acceptance prematurely delivered the deed to Sorce, but in such case the delivery would be invalid and would pass no title to Sorce.

The difficulty in this case and the key to the problem is Mr. Kaminsky, whose companies obtained double credit out of one piece of property by the utilization of an unrecorded deed in escrow. As we view the facts, the burden rests upon Sorce and those claiming through him to prove that he had title to the property. *See* 4 Tiffany, *supra,* at p. 246, sec. 1053. Sorce was not called to testify and no records of Auto Acceptance were subpoenaed; this court cannot speculate on the significance of the various acts of these parties. On this record, there is a failure

---

[3] *See* Tiffany, *supra,* at page 455, sec. 533, and 23 Am. Jur. 2d, *Deeds,* p. 172, sec. 124.

of proof to show the validity of the quitclaim deed from Interstate to Sorce and to show any priority of the appellants over the creditors claiming through the recorded title in Interstate.

*By the Court.*—Judgment affirmed.