**In the Matter of R.C.R. CORPORATION, Debtor.**

**R.C.R. CORPORATION, Plaintiff,**

v.

**The BANK OF MIDDLETON, Defendant.**

**Adv. No. 85–0176–11.**

United States Bankruptcy Court, W.D. Wisconsin.

Feb. 14, 1986.

William F. Heibl, Heibl, Heibl, Crisafi & Soglin, Madison, Wis., for defendant.

Michael E. Kepler, Madison, Wis., for plaintiff.

## MEMORANDUM DECISION AND ORDER

ROBERT D. MARTIN, Bankruptcy Judge.

This proceeding was instituted by the debtor in possession, R.C.R. Corporation, Inc. ("RCR"), under section 544 of the Bankruptcy Code to avoid its mortgage and real estate security agreement with the defendant Bank of Middleton ("the bank"). The parties have stipulated that no factual issues are in dispute and that this matter may be treated as on cross-motions for summary judgment. Jurisdiction is present under 28 U.S.C. §§ 157 and 1334.

On November 26, 1980, the Board of Directors of RCR Corporation approved a corporate borrowing resolution which authorized the president and secretary to secure a federally guaranteed loan at the bank. The resolution required the signatures of both the president and secretary on all loan documents. There is no evidence that the resolution was recorded as permitted by WIS.STAT. § 706.03(3).

On February 25, 1981, the Board of Directors of RCR apparently without specifically revoking the previous resolution approved a second corporate borrowing resolution which unambiguously authorized either the president or the secretary of RCR to sign and deliver notes, mortgages and similar documents for the purpose of securing loans from the bank. It is admitted that this document was not recorded.

On February 25, 1981, Roy Halverson, acting as president of RCR, executed the mortgage ("the mortgage") that is the subject of this dispute. The execution was acknowledged by Donna Richter, a notary who was not an officer of RCR. The mortgage was duly recorded on March 23, 1981.

On December 17, 1981, Susan Halverson, acting as secretary of RCR executed the Real Estate Security Agreement ("the security agreement") that is in controversy. Her signature was also acknowledged by Donna Richter. The security agreement was recorded on March 10, 1982.

RCR filed a chapter 11 petition on April 29, 1985, and commenced this adversary proceeding on June 12, 1985. RCR argues that since neither the mortgage nor the security agreement was signed by more than one officer of the corporation, neither was effective to convey any interest in

RCR's real property to the bank. Alternately, RCR suggests that the instruments were not properly recorded and are thus avoidable under section 544 of the Code.

### I.

If the mortgage and real estate security agreement were void ab initio then recordation could not transfer any interest to the bank. *See Gilbert v. Jess,* 31 Wis. 110 (1872); *see also Galloway v. Hamilton,* 68 Wis. 651, 32 N.W. 636 (1887). WIS.STAT. § 706.02 sets out the formal requirements of a valid conveyance. Section 706.02(1)(d) requires that a conveyance be "signed by or on behalf of ... the grantors...." [1] Section 706.03(1) sets out the requirements for a valid conveyance by an agent:

> A conveyance signed by one purporting to act as agent for another shall be ineffective as against the purported principal unless such agent was expressly authorized, and unless the authorizing principal is identified as such in the conveyance or in the form of signature or acknowledgment. The burden of proving

the authority of any such agent shall be upon the person asserting the same. WIS.STAT. § 706.03(1).[2] There is no contention in this proceeding that the conveyances in question were not actually authorized or that the principal-agency relationship does not appear in the instruments. Rather, RCR contends that the instruments were void because WIS.STAT. § 706.03(2)[3] affirmatively requires that corporate conveyances be signed by at least two officers of the corporation unless an alternate procedure has been adopted and filed as permitted by section 706.03(3)[4]. RCR argues that since the February 25, 1981, borrowing resolution, which allows conveyances by either the president or secretary, was not recorded as permitted by section 706.03(3) it was legally ineffective and could not constitute valid authorization for a one signature conveyance.[5]

Reliance is placed upon *Galloway v. Hamilton, supra,*[6] which dealt with a fraudulent conveyance made without actual corporate authority. *See id.,* 68 Wis. at 655, 32 N.W. 636. However, in *Jefferson Gardens, Inc. v. Terzan,* 216 Wis. 230, 257

---

1. WIS.STAT. § 706.02(1)(d) provides:
 (1) Transactions under s. 706.01(1) shall not be valid unless evidenced by a conveyance which:
 ....
 (d) Is signed by or on behalf of each of the grantors....

2. Section 706.03(1) abandoned the requirement of corporate signature by specified officers. *See* W.S.A. § 706.03 Committee Comment—1969.

3. WIS.STAT. § 706.03(2) provides:
 Unless a different authorization is recorded under sub. (3) or is contained in articles of incorporation adopted and filed pursuant to s. 180.70(2), any officer of a private corporation, whose signature is attested by another officer, is authorized to sign conveyances in the corporate name. The absence of a corporate seal shall not invalidate any corporate conveyance. Public corporations shall authorize and execute conveyances as provided by law.

4. WIS.STAT. § 706.03(3) provides:
 Any private corporation may, by resolution of its governing board, duly adopted, certified and recorded in the office of the register of deeds of the county in which a conveyance executed by such corporation is to be recorded, authorize by name or title one or more

persons, whether or not officers of such corporation, to execute conveyances, either generally or with specified limitation, in the name and on behalf of such corporation. After adoption and recording of such resolution and until recording of a resolution amending or revoking the same, conveyances may be executed on behalf of such corporation only in accordance with the terms thereof.

5. Section 706.03(2) merely states "any officer ... whose signature is attested by another officer, is authorized to sign conveyances in the corporate name." *See* footnote 3, *supra.* It may well be in this case that the signatures of both Roy and Susan Halverson have in fact been adequately attested since the borrowing resolution of February 25, 1981, which has an attached signature facsimile page containing the signatures of Roy and Susan Halverson, was signed by an additional director of the corporation.

6. The following language is referred to:
 where a general law provides ... the mode in which a deed of a corporation conveying its real estate shall be executed, this mode must be adopted in order to its validity [sic] as a corporate act.
 *Galloway,* 68 Wis. at 655–56, 32 N.W. 636.

N.W. 154 (1934), the court emphatically rejected RCR's theory:

> The claim of non-execution of the [land] contract is based on the proposition that as sec. 235.19(2), Stats., provides that a conveyance by a corporation of [an] interest in real estate shall be signed by the president and secretary of the corporation, and the contract was signed by the president only, the contract was void, and therefore no contract was executed.
>
> . . . .
>
> The claim that the contract is void because not signed by the secretary of the corporation is without merit. Granting that the land contract conveys to the vendee an interest in the land covered by it, the statute relied on only affects the recordability of the contract and the rights of subsequent purchasers of the land who purchase from the vendor in ignorance of the existence of the contract. The contract is good between the parties. This was settled as the law of this state by the decision in *Leinenkugel v. Kehl*, 73 Wis. 238, 40 N.W. 683, which reviewed the earlier decisions of this court and has been consistently followed ever since. *Welsh v. Blackburn*, 92 Wis. 562, 564, 66 N.W. 528; *Harrass v. Edwards*, 94 Wis. 459, 463, 69 N.W. 69; *Marvin v. Anderson*, 111 Wis. 387, 392, 87 N.W. 226. These cases involve deeds not witnessed or acknowledged according to the statute. But the provision respecting the signatures of the president and secretary of a corporation is incorporated in the same statute with those respecting witnesses to signatures and acknowledgment. Sec. 235.19. The one provision of the statute is subject to the same construction as the others, so far as the purpose of the provisions and the effect of non-compliance are concerned. The president of the plaintiff corporation was authorized to act for the corporation in the matter, and any memorandum satisfying the statute of frauds, secs. 240.06 and 240.08, Stats. 1933, signed by an authorized agent of the vendor is valid and enforceable. *Douglas v. Vorpahl*, 167 Wis. 244, 166 N.W. 833; *Russell v. Ives*, 172 Wis. 123, 178 N.W. 300.

*Jefferson Gardens*, 216 Wis. at 233–35, 257 N.W. 154; *see also Gilbert v. Jess*, 31 Wis. 110, 114–16 (1872).

 The effect of section 706.03(2) is to provide third parties relying on the record a conclusive presumption that corporate officers are in fact authorized to bind the corporation. Thus, section 706.03(2) provides a method for meeting the burden of proof as to agency authority contained in section 706.03(1).[7] Section 706.03(2) may not be used by the parties to a transaction or their successors in interest to attack an admittedly authorized conveyance. *See Fontaine v. Brown County Motors Co.*, 251 Wis. 433, 437, 29 N.W.2d 744, 747 (1947) (former section 235.19 created a presumption of validity). Any other interpretation of section 706.03(2) would run afoul of the express statutory rule of construction contained in section 706.01(3):

> This chapter [chapter 706, Wis.Stats.] shall be liberally construed, in cases of conflict or ambiguity, so as to effectuate the intentions of parties who have acted in good faith.

WIS.STAT. § 706.01(3). *See also Lyons v. Menominee Enterprises, Inc.*, 67 Wis.2d 504, 227 N.W.2d 108, 113 (1975); *Eastman v. Parkinson*, 133 Wis. 375, 380–81, 113 N.W. 649, 651 (1907); *St. Clair v. Rutledge*, 115 Wis. 583, 591, 92 N.W. 234, 236 (1902).

Finally, RCR ratified the conveyances by retaining the loan proceeds procured thereby.[8] RCR's rights as a debtor in possession under section 544 attached long after RCR "ratified" the mortgage and security agreement in question. *See* 11 U.S.C.

---

7. The language of section 706.03(2) suggests that a party to a corporate conveyance need only prove that those executing the conveyance were actually officers of the corporation; section 706.03(2) then appears to create a conclusive presumption that the officers were "expressly authorized" as required by section 706.03(1).

8. *See Lyons, supra*, 67 Wis.2d at 511, n. 16, 227 N.W.2d at 113, n. 16.

§ 544; *In Re Mitchell,* 9 B.R. 577, 578 (Bankr.D.Or.1981).

## II.

■ RCR argues that as a debtor in possession it may avoid the bank's liens under 11 U.S.C. § 544(a), because the mortgage and security agreement were never properly recorded. Although RCR has asserted claims under all three paragraphs of subsection (a) it concedes that section 544(a)(1) is applicable only if the bank's mortgage and security agreement were void. RCR as a hypothetical judgment creditor under section 544(a)(1) has only those rights which an actual judgment lien creditor would have under state law. *See In Re Fitzpatrick,* 29 B.R. 701, 703 (Bankr. W.D.Wis.1983). Under Wisconsin law judgment lien creditors are not bona fide purchasers for value who may rely on the recording act. *See* WIS.STAT. § 706.08(1); *In Re Fitzpatrick, supra; West Federal S. & L. v. Interstate Investment,* 57 Wis.2d 690, 693–94, 205 N.W.2d 361 (1973); *IFC Collateral Corp. v. Commercial Units, Inc.,* 51 Wis.2d 41, 47–52, 186 N.W.2d 214 (1971). The failure of record notice cannot inure to the benefit of a judgment lien creditor since he does not part with value in reliance on a misleading state of record title. *IFC Collateral, supra.* While a judgment lienor would take priority over an unsecured creditor claiming under a void mortgage, he would not take priority over a valid pre-existing mortgage which was merely unrecorded. RCR's section 544(a)(1) claim is meritless.

RCR also asserts a claim under section 544(a)(2). RCR has failed to cite any authority tending to show that its rights under section 544(a)(2) are any greater than its rights under section 544(a)(1) as against a prior valid but unrecorded interest. Even if the bank's mortgage and security agreement are defectively recorded, RCR cannot avoid them under section 544(a)(2), since the rights of an execution lien creditor are clearly analogous to the rights of a judicial lien creditor under Wisconsin Law. *See* WIS.STAT. § 706.08(1) (unrecorded convey-

ances void only as against subsequent good faith purchasers for value). *Accord In Re Euro-Swiss International Corp.,* 33 B.R. 872, 880–81 (Bankr.S.D.N.Y.1983). *See also IFC Collateral, supra,* 51 Wis.2d at 47–52, 186 N.W.2d 214.

RCR's final argument is under section 544(a)(3) which grants the trustee the rights of a hypothetical bona fide purchaser of real property. The trustee's rights are determined by reference to state law with the important limitation that the trustee is deemed not to have such actual knowledge of prior transactions as would defeat his claim. 11 U.S.C. § 544(a)(3); *see In Re Fitzpatrick, supra; In Re Euro-Swiss, supra.*

The applicable state law provides in relevant part:

> Every conveyance (except patents issued by the United States or this state, or by the proper officers of either) which is not recorded as provided by law shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate or any portion thereof whose conveyance shall first be duly recorded.

WIS.STAT. § 706.08(1)(a). Section 706.08 and its predecessors are codifications of the common law bona fide purchaser doctrine. *See Bump v. Dahl,* 26 Wis.2d 607, 613, 133 N.W.2d 295 (1965), *reh. denied,* 26 Wis.2d 607, 616a, 134 N.W.2d 665 (1965). To be a purchaser in good faith a party must be without notice of pre-existing rights. The "no notice" requirement of the statute means that a party must have neither actual knowledge nor constructive notice of the rights of other parties. *Id.* Constructive notice arises when a party without actual knowledge fails to exercise reasonable care to investigate sources of information which would lead to actual knowledge of the conflicting rights of others. *See id., Uhrman v. Cutler-Hammer, Inc.,* 2 Wis.2d 71, 85 N.W.2d 772 (1957). Although the actual knowledge requirement may not be interposed against a trustee under section 544, the doctrine of constructive notice may. *In*

*Re Fitzpatrick, supra* at 705; *In Re Euro-Swiss, supra* at 881–82.

RCR contends that the conveyances to the bank were improperly recorded and thus cannot provide constructive notice to a bona fide purchaser. RCR relies on *Gilbert v. Jess, supra,* which held that a mortgage not witnessed in the proper form is unrecordable and if recorded provides no constructive notice to a subsequent purchaser. *Id.,* 31 Wis. at 116. The dicta RCR relies on in *Gilbert* is no longer good law. The current statute has a saving clause:

> Every instrument which the register of deeds shall accept for record shall be deemed duly recorded despite its failure to conform to one or more of the requirements of this section, provided the instrument is properly indexed in a public index maintained in the office of such register of deeds and recorded at length at the place there shown.

WIS.STAT. § 706.05(7). Thus even if the conveyances to the bank failed to bear all the signatures required by law, the instruments were still duly recorded and constituted constructive notice of the facts contained therein which a good faith purchaser is not at liberty to disregard.[9] *See Badger State Agri-Credit v. Lubahn,* 122 Wis.2d 718, 729, 365 N.W.2d 616 (Wis.App.1985); *Kordecki v. Rizzo,* 106 Wis.2d 713, 719, 317 N.W.2d 479 (1982).

A good faith purchaser examining the record of the mortgage and real estate security agreement here in dispute would unquestionably be under a duty to make inquiry as to whether the conveyances were actually authorized by RCR. Such inquiry would reveal that authority had in fact been granted. Thus RCR as debtor in possession has constructive notice of this fact and cannot avail itself of bona fide purchaser status under section 544(a)(3).

Upon the foregoing which constitutes my findings of fact and conclusions of law in this proceeding it is hereby ordered that the complaint of RCR be and hereby is dismissed.

---

9. In fact, as discussed above, the instruments were entirely valid and thus did bear "such signatures as are required by law" to satisfy the statute of frauds. *See* WIS.STATS. §§ 706.-05(2)(a), 706.02(1)(d); 706.03(1), *supra.* The fact that the provisions of section 706.03(2) may not have been complied with is of no consequence either to the validity of the transactions as between the parties or to the recordability of the instruments.